Jesus CISNEROS, Jr., Appellant,

v.

The STATE of Texas, Appellee.

Eduardo CISNEROS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 04–87–00308–CR, 04–87–00309–CR.

Court of Appeals of Texas, San Antonio.

March 23, 1988.

Jeremiah I. Rhodes, Eagle Pass, for appellant.

Amado Abascal, III, Dist. Atty., Eagle Pass, for appellee.

Before BUTTS, REEVES and CHAPA, JJ.

## OPINION

CHAPA, Justice.

These are appeals from the convictions of appellants Eduardo Cisneros and Jesus Cisneros Jr. for the murder of Cesar Flores. Jesus Cisneros Jr. was sentenced to confinement for 99 years, and Eduardo Cisneros to confinement for 50 years. After timely motions for new trial were filed and denied, these appeals have been perfected. Both Cisneros present identical points of error on appeal and we will therefore deal with them jointly. We reverse and remand.

The issues before us are:

1) whether the appellants were deprived of a fair and impartial jury without fault or lack of diligence on their part;

2) whether the court erred in denying the appellants' requested Special Issue as to their right to continue shooting;

3) whether the court erred in denying the appellants' requested instruction as to their right to pursue their adversary until all danger had passed;

4) whether the court erred in denying the appellants' requested charge as to their right to arm themselves.

Because of our holding as to the fourth point of error, we will not address the final point of error. TEX.R.APP.P. 90(a).

Appellants complain that they were denied a fair and impartial jury because Juror Mario Pola, a first cousin of State's witnesses Arturo and Rodrigo Escamilla, was selected as a juror without their knowledge of his blood-relationship to the witnesses.

The record reflects that during the voir dire, although the prospective jurors were advised that Arturo Escamilla was a State witness, Pola failed to disclose he knew him after the District Attorney asked if any juror knew any witness. During the motion for new trial hearing, although somewhat contradictory at times, Pola testified that he advised the trial judge he was a cousin of Escamilla before the jury was selected. However, the trial judge recalled he was advised by Pola of the possibility of a blood relationship only after the jury had been selected and before it was sworn. Regardless, this information regarding the relationship of Pola and the Escamillas was not revealed to counsel for either side by the trial judge. The trial proceeded with Pola as a member of the jury. Although an alternate juror was selected at the outset, she substituted for another excused juror several days into the trial, and before counsel for appellants had any knowledge of the relationship of Pola and the Escamillas. Appellants first became aware of the relationship between Pola nad the Escamillas during the trial but made no motion for a mistrial or objected in any other manner. However, the record fails to indicate appel-

lants knew Pola had communicated with the judge about the relationship until the hearing on the motion for a new trial.

The critical nature of the testimony of Arturo and Rodrigo Escamilla is readily apparent when considering the theories pursued by the State and appellants during the trial. The State contended that the deceased, who was in his truck, was first shot by Jesus Cisneros Jr. from the apartment balcony above. The appellants asserted a self-defense theory contending Jesus Cisneros Jr. was fired at first by the deceased when on ground level, and only then responded with fire. The Escamilla brothers were the only State eye witnesses and they testified the firing commenced from the balcony. Thus, the credibility of the Escamilla brothers was crucial to establish the case for the State and to destroy the self-defense theory of the appellants.

In *Von January v. State*, 576 S.W.2d 43 (Tex.Crim.App.1978), the Court reversed the conviction when a prospective juror denied knowing the accused and it was later discovered he had known the accused for many years. In reversing, the Court stated:

> ... It was for defense counsel, and not the prospective juror, to decide whether Dunn's relationship to the Parkers made him unacceptable and subject to a peremptory challenge. Dunn's failure to truthfully answer the question propounded to him prevented defense counsel from making this determination. When a partial, biased, or prejudiced juror is selected without fault or lack of diligence on the part of defense counsel, who has acted in good faith upon the answers given to him on voir dire not knowing them to be inaccurate, good ground exists for a new trial. *Norwood v. State, supra*, and cases cited therein.

*Von January v. State*, 576 S.W.2d at 45; *Norwood v. State*, 123 Tex.Crim. 134, 58 S.W.2d 100 (1933); *Bolt v. State*, 112 Tex. Crim. 267, 16 S.W.2d 235 (1929); *Adams v. State*, 92 Tex.Crim. 264, 243 S.W. 474 (1921).

The State contends the appellants have waived any complaint because they failed to sufficiently pursue questioning of Pola during voir dire, and did not move for a mistrial upon discovering Pola's relationship with the Escamillas during the trial. The State further contends that the trial judge had no obligation to disclose to the Cisneros what he had been told by Pola.

It is not lack of diligence for an accused to believe what a prospective juror states. To require an accused to assume a prospective juror is untruthful and irritate the juror with accusing questions, would most certainly result in a prejudiced juror. In this case, Pola indicated he did not know Escamilla in answer to questions of the District Attorney, and appellants were entitled to rely on that answer.

Although there is contradiction as to what Pola actually related to the trial judge, the matter should have nevertheless been revealed to the parties in order that the parties could have decided what action, if any, they wished to take. "It was for defense counsel ... to decide whether [Pola's] relationship to [the Escamillas] made him unacceptable and subject to a peremptory challenge." *Von January v. State*, 576 S.W.2d at 45.

At issue then is whether the appellants' failure to object in a form of a requested mistrial or otherwise upon discovering the alleged defect, amounted to a waiver or lack of diligence.

> 'The purpose of an objection is to challenge the correctness of the action by the trial court to the end that such action may be corrected by the court itself, if deemed erroneous, and to lay the foundation for its review, if necessary, by the appropriate appellate tribunal; and the accused cannot remain silent, gambling on his chances for a favorable verdict, and then, when the verdict has gone against him, raise objections which he knew of and which could have been raised during trial.' 24 C.J.S., Criminal Law, Section 1670, at page 1063.

*Rogers v. State*, 640 S.W.2d 248, 264 (Tex. Crim.App.1982) (on State's second motion for rehearing).

As a general rule, alleged errors on appeal will not be considered unless they have first been brought to the attention of the trial judge by proper objection at the time during the trial. *Esquivel v. State,* 595 S.W.2d 516 (Tex.Crim.App.1980) (en banc), *cert. denied,* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). This contemporaneous objection rule has been held to also apply to constitutional questions, *Mendoza v. State,* 552 S.W.2d 444 (Tex.Crim.App. 1977); to alleged violations under the Sixth and Fourteenth Amendments, *Dunlap v. State,* 477 S.W.2d 605 (Tex.Crim.App.1971); to alleged violations under the Fourth Amendment, *Darland v. State,* 582 S.W.2d 452 (Tex.Crim.App.1979); to alleged due process violations in the selection of the jury, *Crawford v. State,* 617 S.W.2d 925 (Tex.Crim.App.1981) (en banc); and to alleged due process violations in the revocation of probation process. *Rogers v. State,* 640 S.W.2d at 265.

This record discloses that the appellants became fully aware of the relationship between Pola and the Escamillas during the trial. However, the record is silent as to a request for a mistrial, objection, or any other requested relief. Therefore, we hold that the appellants' silence amounted to a waiver and lack of diligence. The complaint is overruled.

■ The appellants next contend the court erred in refusing their requested Special Issues as to Jesus Cisneros' right to continue shooting and to pursue his adversary until all danger had passed. Without citing any authority, the State merely generally disagrees.

The appellants rely upon *Smith v. State,* 411 S.W.2d 548 (Tex.Crim.App.1967). However, the Texas Court of Criminal Appeals was presented this same contention in *Philen v. State,* 683 S.W.2d 440, 445 (Tex. Crim.App.1984) (en banc), and discarded the applicability of *Smith v. State,* 411 S.W.2d 548, noting that *Smith* was decided prior to the 1974 Penal Code and its provi-sions. The Court of Criminal Appeals held that the same self-defense instructions given in this case were sufficient without the herein additional requested instructions.

In affirming, the Court of Criminal Appeals stated:

Viewing the instructions on the law of self-defense, the jury was instructed in effect that regardless of when or where the fatal shots were fired, the appellant should be acquitted if he was acting in self-defense. See *Dominquez v. State,* 532 S.W.2d 95 (Tex.Cr.App.1976).

The essence of the requested charge was repetitious in effect of that given in the main charge. When the charge refusal is substantially the same as that given by the court, no harm is shown. *Aranda v. State,* 506 S.W.2d 221, 225 (Tex.Cr.App.1974); *Dominquez v. State, supra.* Appellant's rights were adequately protected.

The trial court did not err in overruling the objection and the special requested charge. See *Stevens v. State,* 671 S.W. 2d 517 (Tex.Cr.App.1984).

*Philan v. State,* 683 S.W.2d at 445.

The points of error are therefore overruled.

■ The appellants next contend the trial court erred in failing to charge the jury on their right to arm themselves. Without citing authorities or distinguishing authorities cited by the appellants, the State contends such an instruction is not supported by the evidence.

[I]t is equally well settled that if the court's instruction limits the accused's right of self-defense by a charge on provoking the difficulty, then the jury should be advised in a proper instruction under the facts that the accused's right of self-defense would not necessarily be abridged by the fact that he carried arms to the scene of the difficulty if such instruction is supported by the evidence.

*Young v. State,* 530 S.W.2d 120, 122 (Tex.

Crim.App.1975).[1] *Banks v. State*, 656 S.W. 2d 446, 447 (Tex.Crim.App.1983) (en banc); *Gassett v. State*, 587 S.W.2d 695, 697 (Tex. Crim.App.1979); *Williams v. State*, 580 S.W.2d 361, 362 (Tex.Crim.App.1979); *Martinez v. State*, 653 S.W.2d 630, 637 (Tex. App.—San Antonio 1983, pet. ref'd). This rule is unchanged by the new Penal Code. *Young v. State*, 530 S.W.2d at 123. It is also unchanged by the fact that the accused may have requested the provocation charge. *Banks v. State*, 656 S.W.2d at 447 (Tex.Crim.App.1983) (en banc).

The record here reflects the court limited the self-defense instruction with a charge on provoking the difficulty. The record also reflects that appellants requested an instruction on their right to arm themselves. The issue therefore is whether the evidence supported the right to arm instruction. If so, the instruction should have been given under these circumstances.

In *Young v. State, supra,* the court held the evidence supported and required a right to arm charge where the appellant testified that:

1) the deceased had previously threatened him while the deceased was in prison and later in the county jail;

2) a conversation on the day of the shooting with his brother placed him in fear of the deceased;

3) he armed himself and went to the home of the deceased to "try to get it straight"; and

4) he shot the deceased in the deceased's home, when the deceased assaulted him with a broom.

In *Banks v. State, supra,* the court held that the evidence supported and required a right to arm charge where the appellant testified that:

1) he and the deceased had been engaged in a feud for some time;

2) the deceased had constantly "bullied" and "picked on" him;

3) he was afraid the deceased "would have jumped on me and beat me up" if he had not armed himself when he went to ask the deceased to return his money; and

4) he shot the deceased in self-defense when the deceased turned towards him.

In *Williams v. State, supra,* the court held that the evidence supported and required a right to arm charge where the appellant testified that:

1) he was chased from a tennis court by the complainant and a friend, both weighing over 235 lbs and armed with a tree limb and beer bottles;

2) he returned to retrieve his car armed with a shot gun; and

3) he fired twice when he saw the complainant crouched near appellant's car pointing what he thought was a gun.

In *Gassett v. State, supra,* the court held that the evidence supported and required a right to arm charge where the appellant testified that:

1) he and his wife, who had previously been married to the deceased, had taken the minor child of the marriage of the deceased and appellant's present wife out

---

1. The court in *Young v. State,* 530 S.W.2d at 122, stated:

    In 4 Branch's Ann.P.C., 2d ed., Sec. 2126, p. 451, it is stated:

    "The settled law now is that, unless the court has abridged the defendant's right or claim of self-defense by giving a charge on 'provoking the difficulty,' it is not necessary in any case for the court to charge on the defendant's right to arm himself or to charge on his right to seek a discussion with or an explanation from the deceased about any matter, provided a full charge on self-defense is given. But if the court has charged on provoking the difficulty, then it is imperative and necessary

    under the decisions that the court give a charge on the defendant's right to arm himself and seek such explanation. *Dunne v. State,* 102 [Tex.] Crim. [R.] 435, 278 S.W. 201; *Harris v. State,* 116 [Tex.] Crim. [R.] 426, 32 S.W.2d 459; *Porter v. State,* 152 [Tex.] Crim. [R.] 540, 215 S.W.2d 889."

    In 29 Tex.Jur.2d, Homicide, Sec. 332, p. 647, it is also pointed out that:

    "An instruction on the right to arm is, ordinarily, called for where the issue of provocation is left to the jury. In such a situation, the jurors should be advised that the defendant's right of self-defense would not necessarily be abridged by the fact that he was armed."

of state after a court had granted custody of the child to the deceased;

2) the purpose was to prevent the deceased from having custody of the child;

3) he returned home alone a week before the homicide;

4) the deceased frequently drove around the neighborhood of the appellant in an effort to find his child;

5) he feared the deceased because of the custody matter, and his knowledge of the violence of the deceased, who carried a gun in his car;

6) he saw the deceased and his new wife driving towards appellant's home;

7) he curbed deceased's car with his pick-up;

8) with a pistol in hand he approached deceased's car seeking an explanation for deceased's continuous surveillance of appellant's home; and

9) shot the deceased when the deceased, with a gun in his hand, got out of the car and started to move his hand forward.

In *Martinez v. State, supra,* this Court held that the evidence supported and required a right to arm charge when the appellant testified that:

1) he and his brother discovered where their property had been taken to after a burglary of their home;

2) he and his brother went and purchased a shotgun to go and retrieve their property;

3) he felt obligated to arm himself because several hand guns and a rifle had been taken from their home;

4) he and his brother went to the deceased home armed with the shotgun, and found the stolen property;

5) a struggle ensued between him and the deceased when he saw the deceased had a handgun; and

6) during the struggle, appellant recovered deceased's gun and shot him twice in the back of the head because he thought the deceased was reaching for another weapon.

In the case before us, Jesus Cisneros Jr. testified that:

1) there was hatred between the Cisneros family and the deceased for a long time because of the relationship between his sister, Maria Elena Cisneros, and the deceased;

2) he did not intend to kill the deceased but wanted to confront and beat up the deceased because he feared the deceased would provoke a fight with his father, Jesus Cisneros Sr.;

3) he armed himself because he knew the deceased was violent and always carried a weapon;

4) with the rifle pointing away from the deceased, he alone approached the deceased, who was in his truck, and asked him to come out;

5) when the deceased started out of the truck, the deceased fired first, and in self-defense, he returned the fire;

6) no one else fired at the truck;

7) at the time of the shooting, his brother-in-law co-defendant Juan Ruiz was in his Blazer some distance away, and his brother Eduardo was in the vicinity but did not participate; and

8) he later heard the deceased had died.

Juan Ruiz Jr., co-defendant and brother-in-law of the Cisneros, testified that:

1) the statements taken from him were not voluntary and untrue;

2) he was now telling the truth during the trial;

3) he was told by his sister-in-law, Maria Elena Cisneros, that the deceased was a violent and dangerous man, had tried to kill her, and habitually carried a gun;

4) he once saw the deceased with a gun at a friend's house;

5) he communicated all this to the Cisneros prior to the shooting;

6) the Cisneros did not intend to kill the deceased, but wanted to "settle this once

and for all" in a fight because the deceased "was messing with their dad" and they were afraid the deceased would hurt their dad;

7) the weapon was carried only for protection because of the deceased's violent and dangerous reputation; and

8) he did not witness the shooting or participate in it. Maria Elena Cisneros testified that:

1) she first met the deceased when she was 15 when all the Cisneros family worked for the deceased;

2) she later had two children out of wedlock whose biological father was the deceased;

3) friction resulted between her entire family and the deceased as a result of her relationship with the deceased;

4) the deceased was a violent man; and

5) she told Juan Ruiz that the deceased approached her with his gun and got her out of her job, that he would wreck her car whenever he saw her, and that he struck her.

The dissent contends the facts clearly show that the appellants "waylaid the deceased and killed him." Under these circumstances, it reasonably must be concluded that the trial judge instructed on self-defense without justification. With all due respect, it is suggested that in reaching this conclusion, it is necessary to either disregard or disbelieve the evidence presented which indicated any possible justification for the Cisneros to arm themselves.

> Although the State's witnesses contradicted appellant's version of what happened, the issue of whether the charge [right to arm] should have been given *depends on what testimony was presented, not what is or is not believed as to the truth of that testimony....* His requested charge [right to arm] was sufficient to inform the trial court of the need for such a charge, and denial of such a charge constituted reversible error. (emphasis added)

*Williams v. State,* 580 S.W.2d at 363.

It is also well recognized that a defendant is entitled to an instruction on every issue raised by the evidence, whether produced by the State or the defendant, and whether it be strong, weak, unimpeached, or contradicted.

*Thompson v. State,* 521 S.W.2d 621, 624 (Tex.Crim.App.1974).

As in *Gassett* and *Banks,* we do not hold that the jury was required to accept the version of the facts set out by the defense. Nor, as suggested by the dissent, do we hold that the defendant is always guaranteed a jury charge on "right to arm" oneself when a charge on provoking the difficulty is given. We merely hold that the evidence introduced was sufficient to require the requested additional instruction to ameliorate the limitations imposed upon the right of self-defense by the charge on provoking the difficulty.

We cannot say that this error beyond a reasonable doubt made no contribution to the conviction or to the punishment. TEX. R.APP.P. 81(b)(2).

The judgment is reversed, and the cause is remanded to the trial court for a new trial.

BUTTS, Justice, dissenting.

I respectfully dissent. The facts clearly show that the appellants armed themselves with deadly weapons not to go seek an explanation from the deceased but to either "beat him up" or kidnap and castrate him. The admitted purpose was unlawful; this was not for the purpose of arming oneself against an unexpected deadly attack. They did not abandon the unlawful acts, rather, they waylaid the deceased and killed him. Indeed, the appellant were always in the position of aggressors. Their unlawful acts failed to give rise under the circumstances of this case to a right or privilege. The evidence did not warrant the submission of a jury instruction on "imperfect self-defense." *Young v. State,* 530 S.W.2d 120 (Tex.Crim.App.1975) addressed the situation like the present one:

> [I]t is equally well settled that if the court's instruction limits the accused's

right of self-defense by a charge on provoking the difficulty, then the jury should be advised in *a proper instruction under the facts* that the accused's right of self-defense would not necessarily be abridged by the fact that he carried arms to the scene of the difficulty *if such instruction is supported by the evidence.* (Emphasis added).

*Id.* at 122. The law has never been that a defendant is *always* guaranteed a jury charge on "right to arm" oneself when a charge on provoking the difficulty is given. The evidence must give rise to the charge. This court should hold that the trial court correctly denied the requested charge since the facts did not warrant it. Therefore, I respectfully dissent.