NUMBER 13-06-100-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


MARCUS DE LEON, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 156th District Court of Live Oak County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Yañez


 

 A jury found appellant, Marcus DeLeon, guilty of four counts of indecency with a
child by contact (1) and assessed punishment at twenty years' imprisonment and a $2,000
fine on each count. In four issues, appellant contends: (1) the evidence is legally and
factually insufficient to support his convictions; (2) the trial court erred by failing to order a
mistrial based on a juror's failure to disclose her knowledge of the victim's family; (3) his
sentences are unconstitutionally disproportionate to the severity of his crimes; and (4) the
punishment assessed is confusing because there is a conflict between the sentence
pronounced by the judge in court and the sentence shown in the written judgment. We
affirm. 

I. Background 


 At the time of the incidents, the victim, S.T., was approximately ten or eleven years
old. S.T.'s family and appellant's family were friends that frequently met for "family get-togethers" on weekends at each other's homes. (2) S.T. testified regarding four incidents
involving appellant that occurred over several months in August through October of 2004. (3)
The first incident occurred in the bedroom of S.T.'s home. Appellant came into the
bedroom, where S.T. was lying on her bed listening to music. Appellant approached her
and fondled her breast for approximately five minutes. S.T. told appellant to "go away"
several times, and he finally left. The second incident occurred at the Zunigas' home. S.T.
was playing hide-and-seek with her younger brothers and Flora's younger sisters. During
the game, when the lights were off, appellant grabbed S.T., pulled her close, and stuck his
tongue in her mouth. The third incident also occurred at the Zunigas' house. As S.T. was
walking through the house, appellant grabbed her, pulled her into the bathroom, stuck his
hand down the front of her pants (beneath her underwear), and rubbed her "front" "private." 
The fourth incident also occurred in the bathroom at the Zunigas' house. Appellant again
pulled her into the bathroom, touched her breast and sucked on her breast. S.T. told him
to stop. Appellant warned her not to tell anyone because he was afraid he might "get in
trouble" and "lose his baby."

 S.T. testified that she did not tell anyone at the time of the incidents because she
was "just too scared." Sometime in October, (4) she told her closest friend, Sally Sue Garcia,
about the incidents. (5) About a month later, appellant, Flora, and Sally came to S.T.'s house
and spoke to S.T. and her parents about the allegations. S.T. confirmed that the incidents
had occurred; appellant denied the allegations. S.T.'s parents contacted the police.

II. Sufficiency of the Evidence 


A. Standard of Review and Applicable Law 

 1. Legal Sufficiency 

 When reviewing the legal sufficiency of the evidence to support a conviction, we
consider all the evidence in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. (6) This standard gives "full play to the responsibility of the trier of fact
fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts." (7) In this review, we do not reevaluate the
weight and credibility of the evidence; rather, we act only to ensure that the jury reached
a rational decision. (8)

2. Factual Sufficiency

 In determining the factual sufficiency of the elements of the offense, we view all the
evidence in a neutral light to determine whether a jury was rationally justified in finding guilt
beyond a reasonable doubt. (9) We set aside a finding of guilt only if the evidence supporting
the verdict is so weak that the jury's verdict is clearly wrong and manifestly unjust or when
the great weight and preponderance of the evidence is contrary to the verdict. (10) A proper
factual sufficiency review must consider the most important evidence that the appellant
claims undermines the jury's verdict. (11)

 The jury, as the trier of fact, is the exclusive judge of the credibility of witnesses and
the weight to be afforded their testimony. (12) The jury is free to believe one version of the
facts and reject another. (13) It is also entitled to accept or reject all or any portion of a
witness's testimony. (14) We are authorized to disagree with the fact finder's determination
only when the record clearly indicates our intervention is necessary to stop the occurrence
of a manifest injustice. (15)

3. Applicable Law

 Section 21.11 of the Texas Penal Code provides that a person commits the offense
of indecency with a child if, with a child under 17 years and not the person's spouse, the
person engages in sexual contact with the child or causes the child to engage in sexual
contact. (16) "Sexual contact" is defined as "any touching by a person, including touching
through clothing, of the anus, breast, or any part of the genitals of a child" if the act is
committed "with the intent to arouse or gratify the sexual desire" of the person. (17) A jury
may infer the requisite intent from the defendant's conduct, remarks, or all the surrounding
circumstances. (18) The testimony of a child victim alone is sufficient to support a conviction
for indecency with a child. (19) In an indecency with a child case, the code of criminal
procedure allows evidence of other crimes, wrongs, or acts committed against the victim
to be admitted for its bearing on relevant matters, including the state of mind of the
defendant. (20)

B. Analysis 

 Appellant contends the evidence is legally and factually insufficient to support his
convictions. Appellant's sufficiency argument consists of the following:

 In this particular case, this Court of Appeals will note that only the
victim testified that Appellant had committed the four alleged acts of
indecency with a child by contact as alleged in the indictment. Furthermore,
there is evidence that it would be almost impossible for two people to fit into
the bathroom where two of the incidents occurred. There was evidence that
there was animosity between the Appellant and victim's mother which could
have provided a motivation for the victim and her mother to concoct these
various allegations as a vendetta against Appellant. All of the above reasons
could have raised reasonable doubt as to Appellant's guilt. (21) 


 We are unpersuaded by appellant's argument that S.T. was the only person
who testified that the incidents occurred. As noted, the testimony of the child victim
alone is sufficient to support a conviction for indecency with a child. (22) S.T. testified
that two of the incidents occurred in the bathroom of the Zunigas' house. There
was conflicting testimony at trial regarding whether the bathroom was large enough
to accommodate two people. S.T.'s father, Manuel Tanguma, testified that it was
large enough for two people. S.T.'s mother, Monica, also testified that the bathroom
was large enough for two people. Appellant's wife, Flora, testified that the bathroom
was four or five feet wide and approximately six to eight feet in length. She testified
that two people could fit into the bathroom, but it would be "kind of snug." Porfilio
Sanchez, Joe Zuniga's brother-in-law, testified that two people could fit into the
bathroom. Jose Sanchez, a friend of appellant, testified that two "bigger people"
could not fit into the bathroom together, but that it was possible for "little kids." On
the other hand, only Mary Zuniga, Flora's younger sister, testified that two people
could not fit into the bathroom.

 We have reviewed the record for evidence of "animosity" between Monica
(S.T.'s mother) and appellant. S.T.'s father testified that Monica and appellant
would sometimes "cut each other down," but that it was "just playing around." S.T.
testified that her mother and appellant would "cut each other down" and "just be at
each other." Flora testified that Monica and appellant had a "rocky" relationship,
and that, on occasion, Monica would "get upset and leave." She also testified that
appellant and Monica would "tease each other" and "criticize each other" at every
function. The defense called Monica as a witness. She testified that her
relationship with appellant had "ups and downs," and that sometimes, the "joking
around" would upset her. On cross-examination, she was asked if she had told S.T.
to make up these allegations against appellant; she responded that she would not
do that. 

 We again note that the jury is the exclusive judge of the credibility of
witnesses and the weight to be afforded their testimony. (23) After reviewing the
evidence in the light most favorable to the verdict, we conclude that any rational trier
of fact could have found the essential elements of indecency with a child beyond a
reasonable doubt. (24) Therefore, the evidence is legally sufficient to support
appellant's convictions.

 Moreover, after reviewing the evidence neutrally, we do not find that the proof
of guilt is greatly outweighed by evidence to the contrary, nor is it so weak as to
undermine confidence in the jury's determination. (25) Accordingly, we conclude that
the evidence is factually sufficient to support appellant's convictions. We overrule
appellant's first issue.

III. Juror's Failure to Disclose Personal Knowledge


 In his second issue, appellant contends the trial court erred in failing to grant
a mistrial upon learning, immediately after trial, that a juror had failed to disclose her
knowledge of S.T.'s family. After the jury retired for punishment deliberations, a
witness (26) informed the court that one of the jurors, Dora Lopez, had been formerly
married to Manuel Tanguma's uncle. According to the witness, Lopez's daughter
had, on occasion, baby-sat for the Tanguma family. After the jury returned its
punishment verdict, the trial court held a hearing. At the hearing, Lopez testified
that she had been married to Manuel Tanguma's uncle and during that time, lived
across the street from Tanguma for about ten years. (27) Lopez confirmed that her
daughter had baby-sat the Tanguma children, including S.T., a "couple of times." 
She testified that she had no prior knowledge regarding S.T.'s allegations against
appellant, had not discussed the case with anyone, and that her relationship with
her ex-husband's family had not affected her deliberations in the case. Lopez did
not disclose to the other jurors that she knew anyone involved in the case. Lopez
testified that during voir dire, she "must not have heard" the question of whether she
knew Manuel and Monica Tanguma. She did not raise her hand in response to any
of the questions during voir dire because she was "nervous."

A. Standard of Review and Applicable Law 

 The Sixth Amendment guarantees the right to a trial by an impartial jury. (28) 
One aspect of this constitutional right is the opportunity to conduct "an adequate voir
dire to identify unqualified jurors." (29) In Salazar v. State, the Texas Court of Criminal
Appeals held that, "where a juror withholds material information during the voir dire
process, the parties are denied the opportunity to exercise their challenges, thus
hampering their selection of a disinterested and impartial jury." (30) If the juror did not
intentionally withhold this information, that fact is nonetheless "largely irrelevant" in
determining whether the information withheld was material. (31) A defendant is entitled
to rely upon a veniremember's response to questions by the trial judge and
prosecution. (32) Therefore, if a situation arises where material information was
withheld by a juror during voir dire, and if the appellant's subsequent motion for
mistrial is denied, the denial of that motion will be reviewed on appeal for
constitutional error. (33) Stated differently, in such a situation, we must reverse the trial
court's ruling on the motion for mistrial unless we are convinced beyond a
reasonable doubt that a juror's withholding of material information did not contribute
to the defendant's conviction or punishment. (34)

 To be material, the information withheld must be of a type suggesting
potential for bias or prejudice. (35) Material information includes information regarding
a juror's relationship with any party in a criminal proceeding. (36) If counsel discovers
that a member of the venire intentionally failed to disclose material information or
gave false information during the voir dire examination, counsel must request a
mistrial or a new trial as soon as the matter comes to counsel's attention. (37) Failure
to object, request a mistrial or new trial, or request any other relief waives any
error. (38)

B. Analysis 

 The State argues that we should overrule appellant's issue because his
defense counsel failed to diligently pursue voir dire questions which would have
revealed the information he now complains about. We disagree. During voir dire,
the prosecutor told the panel that she was "going to go through the witnesses" to
determine if the veniremembers knew any of them, and specifically asked, "[w]hat
about Manuel and Monica Tanguma and [S.T.]?" As noted above, a defendant is
entitled to rely upon a veniremember's response to questions by the trial judge and
prosecution. (39) Moreover, the appellant's counsel asked, "[i]s there anyone that is
related or was related to any of these individuals that were called?" We conclude
that the withheld information did not result from the appellant's lack of due diligence
in eliciting that information. (40) 

C. Waiver 

 We conclude, however, that appellant waived the issue by failing to object
or request any relief from the trial court. The record shows that when the trial court
learned Lopez had allegedly withheld information, it immediately held a hearing and
allowed appellant's counsel and the State to fully question her. (41) The trial court also
questioned Lopez. At the conclusion of the questions, the trial court excused Lopez
and stated that the court was "in recess." The record is silent as to any objection,
request for mistrial, or motion for new trial by appellant's counsel. We conclude that
appellant's silence amounted to a waiver and lack of diligence. (42) We overrule
appellant's second issue. 

IV. Disproportionate Punishment


 In his third issue, appellant contends that the twenty-year sentences imposed
against him on each count are unconstitutionally disproportionate to the severity of
his crimes, and thus violate the Eighth Amendment. The Eighth Amendment
provides that no cruel and unusual punishment shall be inflicted on individuals. (43) 
It is applicable to the states by and through the Fourteenth Amendment. (44)

 The State argues appellant failed to object at trial regarding cruel and
unusual punishment, and thus failed to preserve the issue on appeal. We agree. 


 In order to preserve a complaint for appellate review, a party must have
presented a timely request, objection, or motion to the trial court stating the specific
grounds for the objection and have obtained a ruling. (45) It is well-settled that even
constitutional rights may be waived by a failure to object. (46) Moreover, this Court
has held that failing to complain that a sentence is cruel and unusual, either by
objection during the punishment phase of trial or by a motion for new trial, waives
the error. (47) Here, appellant neither objected to his sentences nor raised the issue
in a motion for new trial. We hold appellant failed to preserve the issue for review. 
We overrule appellant's third issue. 

V. Conflict Between Oral Pronouncement and Judgment 


 In his fourth issue, appellant complains that his punishment is "confusing and
ambiguous." Specifically, appellant complains of a discrepancy between the
sentence pronounced in open court and the sentence reflected in the written
judgment. 

 Pursuant to the jury's verdict, the trial court formally sentenced appellant to
a twenty-year sentence and $2,000.00 fine on each of the four counts. The State
requested that the sentences run consecutively; appellant's counsel requested that
the sentences run concurrently. The trial court responded:

Counts 1 and 2 are ordered to run concurrently with each other. Counts 3
and 4 will be ordered to run consecutive with Counts 1 and 2. Counts 3 and
4 will run consecutively with each other. (48)


 The written judgment (filed the same day as the pronouncement in open court)
reflects the following: 

**The Court orders Count 1 and 2 to run concurrent with each other, Counts
2 (49) and 4 to run concurrent with each other but Counts 3 and 4 are
consecutive to Counts 1 and 2 (ie: [sic] Counts 3 and 4 shall begin to run
after the Defendant has completed his 20 year sentence on Counts 1 and 2).


 Again, the State argues that appellant failed to object to the sentences on this
ground (or any other) to the trial court and has thus failed to preserve any error. We agree.
The record does not reflect that appellant complained of his sentences, either by filing an
objection, requesting a clarification, or by requesting any other relief. 

 Moreover, we note that when the oral pronouncement of sentence and the written
judgment vary, the oral pronouncement controls. (50) Accordingly, we order the written
judgment to be reformed to conform to the sentences that were orally pronounced. (51) We
overrule appellant's fourth issue.

VI. Conclusion 


 We order the written judgment to be reformed to conform to the sentences that were
orally pronounced, and otherwise affirm the trial court's judgment. 


 
 

 LINDA REYNA YAÑEZ,

 Justice





Do not publish. Tex. R. App. P. 47.2(b).


Memorandum opinion delivered and filed 

this the 28th day of August, 2007. 
1. See Tex. Penal Code Ann. § 21.11(a)(1), (c) (Vernon 2003).
2. Appellant, his common-law wife, Flora, and their baby lived with Flora's father, Joe Zuniga. Joe
Zuniga and the victim's father, Manuel Tanguma, were "best friends." 
3. The description of the incidents is taken from S.T.'s testimony at trial. 
4. The indictment alleges that one incident (touching of the breast) occurred August 7, 2004, two
incidents (touching of breast and genitals) occurred on August 14, and another incident (touching of breast)
occurred on October 2. 
5. Flora testified that Sally Garcia is related to her father. 
6. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Powell v. State, 194 S.W.3d 503, 506 (Tex. Crim.
App. 2006); Hampton v. State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005); Escamilla v. State, 143 S.W.3d
814, 817 (Tex. Crim. App. 2004).
7. Jackson, 443 U.S. at 319.
8. Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993) (en banc); Ozuna v. State, 199 S.W.3d
601, 604 (Tex. App.-Corpus Christi 2006, no pet.).
9. See Watson v. State, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006).
10. Id. at 415.
11. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 
12. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Sharp v. State, 707 S.W.2d 611, 614 (Tex.
Crim. App. 1986).
13. Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).
14. Id.; Ozuna, 199 S.W.3d at 605.
15. Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).
16. Tex. Penal Code Ann. § 21.11(a)(1) (Vernon 2003). 
17. Id. § 21.11(c)(1).
18. McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981); see Robertson v. State, 871
S.W.2d 701, 705 (Tex. Crim. App. 1993).
19. See Tex. Code Crim. Proc. Ann. art. 38.07 (Vernon 2005).
20. See id. art. 38.37 (Vernon Supp. 2006).
21. Emphasis in original. 
22. See Tex. Code Crim. Proc. Ann. art. 38.07 (Vernon 2005). 
23. See id. art. 38.04 (Vernon 1979).
24. Jackson, 443 U.S. at 318-19. 
25. Watson, 204 S.W.3d at 415. 
26. The witness was Tina Louise Lopez. 
27. Lopez testified that she moved away in 1987, approximately seven years before S.T. was born. 
She testified that she has never been inside the Tanguma home. 
28. Sypert v. State, 196 S.W.3d 896, 900 (Tex. App.- Texarkana 2006, pet. ref'd) (citing U.S. CONST.
amend. VI). 
29. Id. (citing Morgan v. Illinois, 504 U.S. 719 (1992)). 
30. Salazar v. State, 562 S.W.2d 480, 482 (Tex. Crim. App. [Panel Op.] 1978)
.
31. Sypert, 196 S.W.3d at 900 (citing Franklin v. State, 12 S.W.3d 473, 478 (Tex. Crim. App. 2000)).
32. Armstrong v. State, 897 S.W.2d 361, 368 (Tex. Crim. App. 1995). 
33. Sypert, 196 S.W.3d at 900 (citing Tex. R. App. P. 44.2(a); Franklin v. State, 23 S.W.3d 81, 83 (Tex.
App.-Texarkana 2000, pet. granted), aff'd, 138 S.W.3d 351 (Tex. Crim. App. 2004)).
34. Id. 
35. Ford v. State, 129 S.W.3d 541, 547 (Tex. App.-Dallas 2003, pet. ref'd).
36. Armstrong, 897 S.W.2d at 368.
37. See Cisneros v. State, 747 S.W.2d 946, 949 (Tex. App.-San Antonio 1988, pet. ref'd). 
38. Id. 
39. Armstrong, 897 S.W.2d at 368.
40. See id. at 369. 
41. During the evidentiary phase of the punishment phase of trial, appellant's counsel informed the
court that she had learned of "allegations" that Lopez was related, or had been related, to the Tanguma family. 
The trial court declined to stop the proceedings, but stated that counsel would be allowed to raise the issue
after the jury retired for punishment deliberations. Appellant's counsel responded, "That's fine." After the jury
retired for deliberations on punishment, the court heard evidence from a witness, Tina Louise Lopez. Tina
testified that her boyfriend is appellant's brother. Tina testified regarding her knowledge of the relationship
between the juror, Dora Lopez, and the Tanguma family. The trial court held a hearing, in which Dora Lopez
was questioned, after the jury returned with its verdict on punishment. 
42. See Cisneros, 747 S.W.2d at 949. 
43. U.S. Const. amend. VIII.
44. See Robinson v. California, 370 U.S. 660, 667 (1962). 
45. Tex. R. App. P. 33.1. 
46. See id.; Wright v. State, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000); Luna v. State, 70 S.W.3d 354,
359 (Tex. App.-Corpus Christi 2002, pet. ref'd). 
47. Quintana v. State, 777 S.W.2d 474, 479 (Tex. App.-Corpus Christi 1989, pet. ref'd). 
48. We agree with the State that the oral pronouncement of sentence results in a sentence of sixty
years. 
49. We note that given the "i.e." parenthetical explanation, the reference to "Counts 2 and 4" in the
written judgment may be a typographical error.
50. Ex parte Huskins, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005) (citing Ex parte Madding, 70
S.W.3d 131, 135 (Tex. Crim. App. 2002)).
51. See Thompson v. State, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003) ("The solution in those cases
in which the oral pronouncement and the written judgment conflict is to reform the written judgment to conform
to the sentence that was orally pronounced.").