

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00121-CR

_____


LANCE LASHUN EASTER, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 19F0911-005


Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Justice Stevens

# MEMORANDUM OPINION

Lance Lashun Easter appeals his conviction of possession of a controlled substance—methamphetamine—in an amount of more than four grams but less than 200 grams. After the jury assessed Easter's guilt, he was sentenced to life in prison.[1] Easter appeals, maintaining that the trial court erred when it failed to adequately investigate evidence of juror misconduct. Because Easter waived his sole point of error, we affirm the trial court's judgment.

## I.      Background

After three of the State's witnesses had testified, the trial court was informed that one of the jurors was the mother of Clint Akin, an upcoming witness for the State. Outside the presence of the jury and with no objection from either party, the trial court informed the juror that it intended to excuse her and replace her with an alternate juror. Prior to her leaving the courtroom, Easter asked the juror whether she told any of the other jurors about the situation. The juror explained that she had spoken about it to the two jurors seated next to her and that she did not know if any of the other jurors had overheard their conversation.[2] Neither Easter nor the State had any further questions for the juror. The trial court excused her from the courtroom and then seated an alternate juror. The jury was then brought back into the courtroom, and the trial continued.

---

[1]Easter's punishment was enhanced by two prior convictions.

[2]The juror had been sworn in by the trial court.

## II.    Discussion

Referring to the incident as jury misconduct,[3] Easter contends that the trial court erred when it failed to ask additional questions regarding the extent of the juror's misconduct or whether the remaining jurors had biased opinions as a result of the information. Easter concedes that he neither objected nor questioned the juror any further. Yet, he maintains that the trial court should have been "trigger[ed] . . . into further investigation."

In support of his argument, Easter relies entirely on *Norman v. State*, 588 S.W.2d 340 (Tex. Crim. App. [Panel Op.] 1979). In *Norman*, the trial court interrupted the proceedings to question four female jurors individually and out of the presence of the jury about alleged jury misconduct. *Id.* at 347. During the questioning, the court explained that it had information that a woman on the jury had communicated indirectly with Norman. The trial court had the impression that one of the women on the jury had told a jail inmate that she would not allow Norman to be found guilty. All four women denied having had communication with an inmate. On appeal, Norman argued that the questioning itself was improper and resulted in jury bias against her, thereby, denying her right to a fair trial. *Id.* Noting that the trial court had instructed the jury not to converse with anyone about the case except by permission of the court, the Texas Court of Criminal Appeals explained,

> Since the [trial] court believed its own instructions had been violated, it was perfectly proper for the court itself to make inquiries into possible jury misconduct. Determinations as to jury misbehavior are up to the discretion of the

---

[3]There is nothing in the record to indicate that the juror knew prior to the commencement of trial that her son would be a witness. Instead, it appears that she realized that he was involved in the case when she saw him in a video recording that had been published to the jury.

3

court. We do not find the questioning prejudicial to the defendant. The very basis of the question was directed toward obtaining a fair and impartial trial.

*Id.* (citations omitted).

Contrary to Easter's contention, *Norman* does not address the degree to which a trial court has a duty to sua sponte investigate alleged jury misconduct. Instead, the court held that the trial court was within its discretion to ask questions when it had been placed on notice of the allegation of jury misconduct.

Citing *Cisneros v. State*, 747 S.W.2d 946 (Tex. App.—San Antonio 1988, pet. ref'd), the State contends, among other things, that Easter waived this issue on appeal. In that case, the Cisneroses argued on appeal that they were denied a fair and impartial trial because a juror, Mario Pola, was the first cousin of State's witnesses Arturo and Rodrigo Escamilla. The Cisneroses maintained that Pola had been selected as a juror without them knowing of his relationship to the Escamillas. *Id.* at 947. The record showed that, during jury selection, although the jury panel had been told that Arturo Escamilla was an intended State's witness, Pola did not disclose that he knew him, even after the State asked the panel members whether anyone knew any of the State's witnesses. *Id.*

During a hearing on the Cisneroses' motion for a new trial, Pola testified that he told the trial court that he was the Escamillas' cousin before the jury had been selected. Yet, the trial judge recalled that Pola said he might possibly be "of a blood relationship" only after the jury had been selected but before it had been sworn. *Id.* Despite that, the trial court did not reveal that information to the attorneys for either side. The trial commenced with Pola seated as a juror.

4

The Cisneroses initially learned of the relationship between Pola and the Escamillas during trial, but they did not move for a mistrial or object in any way. *Id.*

The appellate court first noted that the Escamillas' testimony was critical when considering the theories pursued by the State and the Cisneroses at trial. The State argued that the deceased had been shot by Jesus Cisneros, Jr., from the apartment balcony, and the Cisneroses argued that the deceased fired at Jesus first and that only then did Jesus respond. *Id.* at 948. The Escamillas were the only State eyewitnesses, and they testified that the firing commenced from the balcony. Consequently, their credibility was crucial to establish the State's case and to discredit the Cisneroses' theory of self-defense. *Id.*

On appeal, the State argued that the Cisneroses had waived their complaint because they did not sufficiently pursue questioning of Pola during jury selection and did not move for a mistrial upon discovering the relationship between the Escamillas and Pola. *Id.* The State also argued that the trial court did not have a duty to disclose to the Cisneroses what Pola had told it. The court of appeals stated,

> It is not lack of diligence for an accused to believe what a prospective juror states. To require an accused to assume a prospective juror is untruthful and irritate the juror with accusing questions, would most certainly result in a prejudicial juror. In this case, Pola indicated he did not know Escamilla in answer to questions of the District Attorney, and appellants were entitled to rely on that answer.
>
> Although there is contradiction as to what Pola actually related to the trial judge, the matter should have nevertheless been revealed to the parties in order that the parties could have decided what action, if any, they wished to take. "It was for defense counsel . . . to decide whether [Pola's] relationship with [the Escamillas] made him unacceptable and subject to a peremptory challenge." *Von January v. State*, 576 S.W.2d 43, 45 (Tex. Crim. App. 1978).

*Id.* (alterations in original). The court then considered whether the Cisneroses had waived their complaint on appeal due to their failure to object or request a mistrial even after they had learned of the relationship between the Escamillas and Pola. *Id.* Pointing out that, in general, alleged errors on appeal will not be considered unless they have first been brought to the trial court's attention by an appropriate objection during trial,[4] the appellate court found that, because the Cisneroses became aware of the relationship between Pola and the Escamillas during trial but did not object or ask for a mistrial, they had waived their complaint on appeal. *Id.* at 949.

Unlike the facts in *Cisneros*, Akin was not an unusually critical witness because, in large part, his testimony was similar to the events depicted in the body-cam recordings, which the jury was allowed to watch. Moreover, the record shows that the juror at issue notified the court that she was related to Akin as soon as she became aware of the fact that he was involved in the case. It also shows that the trial court informed Easter that the juror was Akin's mother as soon as it learned of the relationship, and it promptly excused her from jury duty. With the exception of asking the juror whether she had informed any of the other jurors that she was Akin's mother, Easter did not ask additional questions of her, did not object, did not ask for a mistrial, and did not notify the trial court in any other manner that he was dissatisfied with the court's inquiry or its decision.[5] Without citing any legal authority in support of his contention, Easter cannot now

---

[4]Generally, "[a]s a prerequisite to presenting a complaint for appellate review, the record must show that" it "was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling . . . with sufficient specificity to make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a).

[5]Easter filed a motion for a new trial, arguing only that "the verdict [was] contrary to the law and the evidence."

6

complain on appeal that the trial court had a duty to sua sponte ask the juror additional questions or to investigate the alleged jury misconduct any further.

As a result, we overrule Easter's sole point of error.

## III.   Conclusion

We affirm the judgment of the trial court.

Scott E. Stevens
Justice

Date Submitted:     May 3, 2022
Date Decided:       June 7, 2022

Do Not Publish