Shirley Thrash NORMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 56831.

Court of Criminal Appeals of Texas, Panel No. 1.

Sept. 19, 1979.

Rehearing En Banc Denied Oct. 31, 1979.

---

**342**

Randy Taylor, Dallas, for appellant.

Tom O'Connell, Dist. Atty., Verla Sue Holland, George E. Gasper and William L. Schultz, Asst. Dist. Attys., McKinney, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and PHILLIPS and TOM G. DAVIS, JJ.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for the offense of delivery of heroin. Punishment was assessed at 50 years' confinement in the Department of Corrections. Appellant initially challenges the sufficiency of the evidence to prove she intentionally and knowingly delivered the heroin.

The record reveals, in a light most favorable to the verdict, that Troy Braswell, a narcotics agent employed by the Texas Department of Public Safety, received a telephone call on January 28, 1976, from Dewayne Hamilton, a· confidential informant, that a meeting for a sale of heroin had been arranged for the afternoon of January 29, 1976, at Dallas North Airport in Collin County. Agent Braswell, together with other agents and law enforcement persons, proceeded to that location on that day. Upon Braswell's arrival, he met with Do-

mingo and Ruby Reyes, who had arrived in another vehicle. Shortly thereafter, the agent and the Reyeses moved their vehicles to another location at the airport. After a brief conversation, during which Agent Braswell showed Reyes $10,000.00 for the purchase of the heroin, Reyes motioned to the occupants of another vehicle that the agent had observed during the conversation. This vehicle was occupied by appellant and her husband, Albert Norman. After Reyes motioned, Al Norman left their car, walked around the car to appellant, who was already out of the car, and handed to appellant a sack which she then carried to Agent Braswell and Reyes's location. She delivered the sack to the agent. The sack contained four prophylactics containing heroin. After the arrest of appellant and the other persons, a search of the Norman vehicle revealed a cellophane package found over the sun visor of the driver's side where Mr. Norman was observed. This package contained heroin.

Possession of the heroin need not be exclusive and evidence which shows that the appellant jointly possessed the contraband with another is sufficient. *Martinez v. State*, 539 S.W.2d 885 (Tex.Cr.App.); *Woods v. State*, 533 S.W.2d 16 (Tex.Cr.App.); *Curtis v. State*, 519 S.W.2d 883 (Tex.Cr.App.), and cases cited therein. However, a finding of joint possession cannot be justified solely by proof of mere presence of an accused at a place where contraband is being used or possessed. *Ayers v. State* 570 S.W.2d 926 (Tex.Cr.App.); *Brooks v. State* 529 S.W.2d 535 (Tex.Cr.App.); *Harrison v. State*, 555 S.W.2d 736. Whether the theory of prosecution is sole or joint possession, the evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and of its whereabouts. *Hernandez v. State*, 538 S.W.2d 127 (Tex.Cr.App.); *Curtis v. State*, supra; *Payne v. State*, 480 S.W.2d 732 (Tex.Cr.App.). This affirmative link is established by showing additional facts and circumstances which indicate the accused's

knowledge and control of the contraband. *Long v. State*, 532 S.W.2d 591 (Tex.Cr. App.); *Hineline v. State*, 502 S.W.2d 703 (Tex.Cr.App.).

■ In this case, more than appellant's mere presence is shown. Appellant exercised control over the sack, not stapled or shut, containing the heroin which she carried from her car to the Reyes car. Agent Braswell testified Reyes said that his runners, indicating appellant and Norman, would bring the heroin to his car upon his (Reyes's) seeing the money. This conversation occurred at both locations.

The heroin found over the driver's visor of the Norman car was that which appellant's husband, a heavy heroin addict shooting approximately $600.00 a day and who "fixed" three or four times a day and who had purchased heroin from Reyes on prior occasions, had obtained from Reyes for his part in the deal. Norman had received it at Reyes's house earlier that morning when he received the sack and a "fix" for payment. Appellant allegedly waited in the car, but the sack of heroin was placed under appellant's car seat when they left the Reyes house.

Following the Reyes car, with the heroin in the Norman car, they proceeded from Oak Cliff to the Mobil Station at Highway 544 and Preston Road. At that location, they met Hamilton. With the appellant present, Reyes removed the sack from underneath the seat of appellant and went with Hamilton into the restroom at the Mobil Station where Reyes gave Hamilton some of the heroin from the sack for his (Hamilton's) part in the transaction. Reyes again placed the heroin under the seat of the Norman car with the appellant present and all of the parties proceeded to Dallas North Airport. Norman testified, however, that because he and his wife were not speaking, appellant did not know the contents of the sack.

■ The jury, being the judge of the credibility of the witnesses, could accept or reject some or all of their testimony. *Drager v. State*, 548 S.W.2d 890 (Tex.Cr.App.).

The language in *Cockrell v. State*, 135 Tex. Cr.App. 218, 117 S.W.2d 1105, is applicable. It is as follows:

> . . . we are not allowed to substitute our judgment for that of the jury, and should not disturb the verdict unless no facts are found to support it. . . .

Based upon these facts and circumstances, the jury could reasonably infer that the appellant knew of the heroin's existence, thereby indicating her knowledge and control. We find the evidence sufficient to sustain the verdict. Appellant's first ground of error is overruled.

■ Appellant's second ground of error alleges that the trial court erred in failing to grant immunity from prosecution to the State's informant, Dewayne Hamilton, when he refused to answer questions on Fifth Amendment grounds because the evidence showed that he was an agent of the State and his testimony was necessary to appellant's defense of "vicarious entrapment," thereby denying appellant her right to compulsory process for obtaining witnesses for her defense in violation of the Sixth and Fourteenth Amendments.

An examination of Dewayne Hamilton's claim against self-incrimination in this case reveals that his claim was spurious and that he was an agent of the State, but the trial court allowed such claim to prevail. The questions presented are whether the trial judge's allowance of a spurious Fifth Amendment claim asserted by the State's informer denied appellant her Sixth Amendment right to call a witness to support her vicarious entrapment defense and if so, was this denial harmless beyond a reasonable doubt.

This is not the first time the trial judge and the State's informant Dewayne Hamilton have come face to face in the same trial. In *Ex parte Turner*, 545 S.W.2d 470 (Tex.Cr.App.), the same trial judge also allowed Dewayne (Duane) Hamilton to claim his Fifth Amendment privilege based upon an undercover agent's sworn denial that he had any relationship with Hamilton. When this Court instructed the trial court in that case to conduct another evidentiary hearing

allowing the petitioner in that habeas corpus proceeding to call Hamilton as a witness, the same trial judge made a fact finding that: "This court finds that Hamilton *could* have been the informant in the transaction and *could* have played a material part in bringing the parties together for the alleged transaction . . ." and that based upon this evidence, Hamilton's Fifth Amendment claim was "without substance," and had the court heard the evidence subsequently given by both the undercover agent and Hamilton at the time of the original trial, the court would not have allowed the claim. (Emphasis added)

The trial court filed these Additional Findings of Fact and Conclusions of Law on April 5, 1976.

On June 23, 1976, two and a half months after he filed the above findings, the trial judge heard evidence in the instant case from State Undercover Agent Braswell that Hamilton *was* the informant in the transaction involving the appellant, *did* play *the* major part in bringing Reyes and Braswell together, and was acting in accordance with instructions from Agent Braswell. Despite this, and his prior findings concerning Hamilton two and a half months before, the trial court again allowed Hamilton to claim his Fifth Amendment privilege against self-incrimination when asked questions concerning himself and Reyes. The law is well settled that if Hamilton was actually working at the direction of and in conjunction with Agent Braswell, he was acting as a State agent and his claim of privilege under the Fifth Amendment was spurious. *Ex parte Turner,* supra.

The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified . . . The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." *Hoffman v. U. S.,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951)

Moreover, assuming that informer Hamilton's taking the Fifth Amendment was a case of first impression with the trial court, we find the procedure followed below erroneous.

At the trial, pursuant to appellant's motion to call Dewayne Hamilton as an adverse witness, a hearing was conducted outside the presence of the jury. All questions propounded to Hamilton concerning his relationship to Reyes and Agent Braswell, his role as an agent of the State, and the heroin delivery were answered: "I refuse to answer on the grounds it may tend to incriminate me." In fact, Hamilton was asked some twenty-four questions by defense counsel, all answered with a claim of the Fifth Amendment, before defense counsel was forced to ask for a grant of immunity. Before this time, the trial court made *no* inquiry into the validity of Hamilton's self-incrimination claim.

In *U. S. v. Gomez-Rojas,* 507 F.2d 1213 (5th Cir. 1975), the defendant pleaded that he had been entrapped by government informer Smith. The informer resisted a defense subpoena by claiming his Fifth Amendment privilege, which the district court upheld without making any inquiry into the validity of the claim. The court there held that the trial court erred by accepting the informer's assurances at face value without determining whether his fear of self-incrimination was well founded and what the parameters of his Fifth Amendment rights were in the context of the testimony that the defense counsel had tried to obtain from him.

*United States v. Waddell,* 507 F.2d 1226 (5th Cir. 1975), held that where the defendant's sole defense to a charge of possession of cocaine with intent to distribute was that a paid government informer entrapped him into selling contraband, the district court's decision to excuse the informer from giving testimony on the basis of a bald assertion of Fifth Amendment privilege without conducting a hearing in the absence of the jury into the facts underlying such an assertion was error.

However, given the facts of this case regarding Hamilton's informer-agent status, it is axiomatic that the appellant has a right to call him as a defense witness and to offer his testimony to the jury.

The right to offer the testimony of witnesses and to compel their attendance, if necessary, is in plain terms the right to present a defense . . . This right is a fundamental element of due process of law. *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); also *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972)

We hold that the trial court committed constitutional error in not granting appellant's request for immunity for informant Hamilton. The next order of inquiry is whether the trial court's denial of appellant's Sixth Amendment right to compulsory process and presenting a defense, by the court's allowing Hamilton to not answer questions propounded to him or not conducting a hearing to ascertain his reason for not doing so, was constitutional error "harmless beyond a reasonable doubt." *Chapman v. California*, 368 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966); *United States v. Mayer*, 556 F.2d 245 (5th Cir. 1977). To answer this, we must look to the materiality and relevancy of the questions asked Hamilton to find if appellant was denied presenting a defense when the questions were not answered.

The sole reason, as expressed by appellant's counsel in having Hamilton testify, was to present an entrapment defense. However, this entrapment defense was a "vicarious" one in that the appellant was trying to prove that because Hamilton, a State agent, possibly entrapped Domingo Reyes, who then enlisted the help of the appellant's husband, who then enlisted appellant's help as deliverer of the heroin, appellant, although thrice removed from the government agent and never directly contacted by him, could avail herself of the entrapment defense which could possibly be asserted by Reyes. Such a "vicarious" entrapment defense is a case of first impression before this Court.

■ Before passing on this question, however, we must address the State's misguided argument that the appellant must have admitted the commission of the offense to present her entrapment defense. The defense of entrapment is not available to a defendant that *denies* the commission of the offense. *Warren v. State*, 565 S.W.2d 931 (Tex.Cr.App.); *Stephens v. State*, 522 S.W.2d 924 (Tex.Cr.App.). This is because a denial of the commission of the offense is inconsistent with entrapment, as this defense assumes that the offense was committed. *Stephens v. State*, supra. However, the defendant who pleads not guilty and who does not take the stand or offer any testimony inconsistent with her commission of the crime would still be entitled to offer a defense of entrapment. See *U. S. v. Groessel*, 440 F.2d 602 (5th Cir. 1971). Thus, the defendant is not required to admit the commission of the offense in each case.

■ In analyzing appellant's vicarious entrapment argument which theorizes that appellant could avail herself of Reyes's possible entrapment defense, we find no merit. Section 8.06 of the Penal Code states:

(a) It is a defense to prosecution that *the actor* engaged in the conduct charged because *he* was induced to do so by a *law enforcement agent* using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment. [Emphasis added]

(b) In this section "law enforcement agent" includes personnel of the state and local law enforcement agencies as well as of the United States and any person acting in accordance with instructions from such agents.

Section (a) above mandates that there must be a *direct link* between the defendant and the law enforcement agent. The *defendant* must be induced by the *agent*, not a private citizen as was the case here. *Pearson v. United States*, 378 F.2d 555 (5th Cir. 1967). It was Reyes who induced appellant's husband who induced appellant to

deliver the heroin. There was no showing anywhere in the record that Hamilton ever made contact with the appellant or induced her to deliver the heroin in any way.

In *Wood v. State*, 516 S.W.2d 667 (Tex.Cr. App.), we held that where the defendant sold methamphetamine pills to a State agent, partly at the suggestion of an acquaintance from whom he had obtained the pills as security for a loan, and the acquaintance was not a State agent, the State was not guilty of entrapment.

To hold otherwise would not advance the policy behind this "objective" test of entrapment as adopted by the Legislature in Section 8.06, supra, which is to deter police conduct violative of law enforcement standards in a civilized society. As stated, only the individual acted upon by the unscrupulous agent enjoys the benefit of the objective test in Section 8.06, supra. The Legislature in Section 8.06, supra, has balanced the benefit of the deterrent effect upon law enforcement agents of allowing unscrupulously induced defendants to go free, with the cost to society of allowing someone other than the directly induced defendant to avail himself of the defense. We note this same cost-benefit analysis has been applied to illegal search and seizure exclusionary rule questions. The U.S. Supreme Court has balanced the benefit of the deterrent effect upon law enforcement agents who conduct illegal searches and seizures by suppressing the evidence illegally obtained therefrom with the cost to society of suppressing same. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Cf. *Rakus v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The immediate and calculable "cost" of sustaining a "vicarious" entrapment defense outweighs the uncertain and therefore negligible deterrent value upon law enforcement agents.

The Legislative intent espoused in Section 8.06, supra, to make entrapment a personal defense and the cost of an unrestricted extension of the defense do not allow vicarious invocation of the entrapment defense.

■ The objective entrapment test mandates that the trial court, having once determined that there was an inducement, need now consider only the nature of the State agent activity involved, without reference to the predisposition of the particular defendant. See 62 A.L.R.3rd 110. The reasoning behind this "objective" test for entrapment was described by Justice Stewart in his dissenting opinion in *United States v. Russell*, 411 U.S. 423, at 441, 93 S.Ct. 1637, at 1647, 36 L.Ed.2d 366 (1973):

Thus, the focus of this [objective] approach is not on the propensities and predisposition of a specific defendant, but on "whether the police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power."

.      .      .      .      .

In my view, this objective approach to entrapment advanced by the Roberts opinion in *Sorrells* and the *Frankfurter* opinion in *Sherman* is the only one truly consistent with the underlying rationale of the defense. Indeed, the very basis of the entrapment defense itself demands adherence to an approach that focuses on the conduct of the governmental agents, rather than on whether the defendant was "predisposed" or "otherwise innocent."

The vicarious entrapment defense espoused by the appellant attenuates the "cost-benefit" policy by allowing a defendant to discredit the inducement methods of State agents when she was never a party to such inducements. Such a policy would allow entrapment defenses by all defendants involved to prevail ad infinitum from the original improper use of governmental power by the State agent, regardless of whether each defendant was ever induced by the government to commit the crime in the first place.

■ In denying appellant's vicarious entrapment defense, we also find that the constitutional error in depriving appellant of her Sixth Amendment right to compulsory process to present a defense was harmless since she in fact had no defense of

entrapment.[1] Thus, any error by the trial court in not compelling the State's informant Hamilton to give answers to entrapment questions of the defense or to inquire into the reasons behind his assertion of the Fifth Amendment was harmless beyond a reasonable doubt. *Chapman v. California,* supra; *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

Appellant's second ground of error is overruled.

Appellant's third and fourth grounds of error allege that the trial court abused its discretion in questioning four female jurors about the possibility of their having talked about the case to a third party in violation of the court's instructions.

During the course of the trial, the district court judge interrupted proceedings to question four female jurors individually and out of the presence of the other jurors about alleged jury misconduct. The court stated during this questioning that it had information that a woman on the jury had communicated indirectly with the defendant. More specifically, it was the judge's impression that one of the women on the jury had told an inmate at the jail that she would not allow the defendant to be found guilty. Each of the four women denied any such communication. Appellant claims that the questioning itself was improper and caused the jury to be biased against the defendant, denying her right to a fair and impartial trial by jury.

■■■ The trial court instructed the jury that it was not to converse with anyone about the case on trial except in the presence and by the permission of the court. The trial court did this in order that the jury would comply with Article 36.22, V.A. C.C.P. Since the court believed its own instructions had been violated, it was perfectly proper for the court itself to make

inquiries into possible jury misconduct. *Nielssen v. State,* 456 S.W.2d 928 (Tex.Cr. App.). Determinations as to jury misbehavior are up to the discretion of the court. *Appleman v. State,* 531 S.W.2d 806 (Tex.Cr. App.). We do not find the questioning prejudicial to the defendant. The very basis of the question was directed toward obtaining a fair and impartial trial.

■■■ Further, if appellant wished to show bias on the part of a juror, her proper remedy was a motion for new trial with an accompanying affidavit by a juror showing such bias. Article 40.03(8), V.A.C.C.P. No such affidavit was presented. Appellant's third ground of error is overruled.

■■■ Appellant's fourth ground of error alleges that the trial court erred in its investigation of the alleged juror misconduct during the trial and at the hearing for motion for new trial by not revealing the source of the information about the alleged jury misconduct.

Appellant cites no authority to support her contention that the trial court abused its discretion in not disclosing the source of its information alleging possible jury misconduct during the trial. On the contrary, we find the court's halting the proceedings and conducting a hearing on the matter immediately was proper. *Wilkes v. State,* 566 S.W.2d 299 (Tex.Cr.App.). *Nielssen v. State,* supra. Based on the jurors' answers to the court's questions, no misconduct had occurred. There was no showing that the defendant was prejudiced by the questioning. (It is also noted that the alleged statement made by the juror would indicate a defense bias *for* the appellant.)

This Court has always held that before a new trial is warranted, there must be injury to the accused. *Lowe v. State,* 226 S.W.2d 674 (Tex.Cr.App.); *White v. State,* 82 Tex. Cr.R. 286, 199 S.W. 1117. Whether or not

---

1. It is noted that only one question was asked of Hamilton (which was not answered) pertaining to the appellant. Hamilton was asked whether or not he saw the appellant on the day of the offense. It was uncontroverted by the State and the defense that appellant was the person who delivered the bag to Reyes and Braswell on the date in question. Importantly, nothing was asked of Hamilton pertaining to appellant's knowledge that the bag contained heroin. Therefore, we cannot say from the record that appellant was denied such evidence, had Hamilton been able to give it.

there was jury misconduct is an issue of fact for the trial court to decide and unless there is a showing that the court abused its discretion, the decision should not be disturbed. *Appleman v. State*, supra.

We find no error committed by the trial court during the hearing and no injury to the appellant.

■ As far as appellant's motion for new trial is concerned, when the appellant failed to support her motion alleging jury misconduct with supporting affidavits of a juror concerning juror bias as discussed above, the court did not err in overruling that motion. *Story v. State*, 502 S.W.2d 764 (Tex.Cr.App.). Appellant's fourth ground of error is overruled.

■ Appellant's final ground of error alleges that the trial court erred in entering the judgment against her because of an alleged fatal variance between the wording of the judgment entered and the offense charged.

The indictment charges appellant with the offense of delivering "to Troy Braswell, a controlled substance, namely, Heroin." The jury verdict as to guilt and innocence and as to punishment both found the defendant guilty as charged in the indictment. The judgment recites:

> The Defendant having been indicted in the above entitled and numbered cause for the felony offense of Delivery of a Controlled Substance, namely: Cocaine
>
> . . .

The judgment further recites that the jury finds the defendant guilty as charged in the indictment.

Article 44.24, V.A.C.C.P., provides that this Court may reform and correct the judgment as the law and nature of the case require. *Weeks v. State*, 476 S.W.2d 310 (Tex.Cr.App.); *Gibson v. State*, 488 S.W.2d 462 (Tex.Cr.App.). Appellant's fifth ground of error is overruled.

The judgment is reformed to reflect the charge in the indictment and the jury's verdict, and as reformed is affirmed.

TOM G. DAVIS, J., concurs in the result.