# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00265-CR

**Jose DeLaLuz Perez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT NO. 09-587-K277, HONORABLE KEN ANDERSON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Jose DeLaLuz Perez guilty of possession of less than one gram of cocaine. Based on his plea of true, the jury found that Perez had two prior convictions for drug-related offenses. The jury assessed sentence at five years in prison. On appeal, Perez contends that the court erred by denying him a new trial because the jury received new evidence after retiring to deliberate. He also argues that the jury's receipt of the new evidence created an unrebutted presumption that the new evidence harmed him and that the court erred by not requiring the State to rebut that presumption to preserve the judgment. Perez also contends that the evidence is legally insufficient to support the judgment. We will affirm the judgment.

Finding that his wife[1] had locked him out of their home, Perez rang the doorbell and knocked so insistently that he damaged the door. Police responding to her 911 call arrested Perez

---

[1] The couple were married and divorced, but now live together. She testified that she considers Perez her common-law husband.

and patted him down at the scene, but found no contraband or weapons. During a more thorough search at the jail, a baggy containing less than a gram of cocaine was discovered on the floor near Perez when his pockets were emptied.

A jury found Perez guilty of possession of a controlled substance. When the jury began considering punishment, the presiding juror notified the trial judge that, during deliberations on guilt/innocence, one of the jurors had used a global positioning system (GPS) personal digital assistant (PDA) to determine whether Perez's home was located in Williamson County. The trial court inquired of each juror whether the map information influenced the verdict. Every juror testified that there was no controversy regarding the location and that the map information had no effect on their verdict. Even the juror who used the PDA because his concern about whether the original altercation occurred in Williamson County was "gnawing" on him testified that the map information made no difference in his verdict.[2] Many jurors agreed that the jury had determined early in deliberations that the crime occurred in Williamson County and that the juror looked at his PDA after that determination was made. The trial court denied Perez's motion for mistrial.

Perez's first two issues concern the effect of the jury's receipt of the new evidence regarding the location of the crime from the juror's PDA. Perez contends that the jury's receipt of that evidence requires that he receive a new trial. The rules of appellate procedure provide in relevant part that "[t]he defendant must be granted a new trial, or a new trial on punishment, for any of the following reasons: . . . . (f) when, after retiring to deliberate, the jury has received other

---

[2] Perez notes that another juror stated that he could not sleep after seeing the PDA use. The context of that statement makes plain that his sleeplessness was due to the unauthorized use of the PDA, not whether the jury had correctly decided that the offense occurred in Williamson County.

evidence; when a juror has talked with anyone about the case; . . . ." Tex. R. App. P. 21.3(f). The court of criminal appeals has held that a juror's conversation about the case with an unauthorized person creates a presumption of harm that the State may rebut. *See Quinn v. State*, 958 S.W.2d 395, 401 (Tex. Crim. App. 1997). Perez further contends that the trial court erred by not requiring the State to rebut the presumption, but instead questioning the jurors and denying Perez's motion for mistrial based on the results of that examination. Perez asserts that the trial court assumed the State's burden to rebut by questioning the jurors. He contends that the court thereby breached its obligation to remain neutral, citing Texas Code of Judicial Conduct Canon 2A which provides in part that "[a] judge shall comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." He argues that, by questioning the jurors, the trial court advocated for the State and violated constitutional fair trial guarantees.

Although Perez's motion for new trial did not itself preserve issues surrounding jury misconduct for review, we will consider whether his motion for mistrial entitled him to a new trial. In his motion for new trial, Perez requested a new trial "in the interest of justice." He did not explain that ground further or suggest another basis for a new trial. As the State points out, that motion did not inform the trial court of the grounds that Perez raises on appeal. The grounds raised here are not a clear, logical extension of the assertion of the interests of justice. The motion for new trial, therefore, did not preserve the error presented on appeal. *See* Tex. R. App. P. 33.1(a)(1)(A) (to preserve error, motion must state the grounds for relief "with sufficient specificity to make the trial court aware of the complaint"). A party may, however, preserve an issue of juror misconduct for appellate review with a timely motion for mistrial. *See Castillo v. State*, 319 S.W.3d 966, 970 (Tex. App.—Austin 2010, pet. denied). A post-verdict grant of a motion for mistrial entitles a

3

defendant to a new trial. *See State v. Boyd*, 202 S.W.3d 393, 401 (Tex. App.—Dallas 2006, pet. ref'd). Perez's motion for mistrial—made after the guilty verdict was reached and as the jury neared the end of its punishment deliberations—presented to the trial court and preserved for appellate review the issue of whether the juror's obtaining and sharing map information entitled Perez to a new trial.

The rules of appellate procedure define reversible error in criminal cases as follows:

(a) Constitutional Error. If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

(b) Other Errors. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

(c) Presumptions. Unless the following matters were disputed in the trial court, or unless the record affirmatively shows the contrary, the court of appeals must presume:

(1) that venue was proved in the trial court;
(2) that the jury was properly impaneled and sworn;
(3) that the defendant was arraigned;
(4) that the defendant pleaded to the indictment or other charging instrument; and
(5) that the court's charge was certified by the trial court and filed by the clerk before it was read to the jury

Tex. R. App. P. 44.2. We review the trial court's denial of a motion for mistrial for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Id.* We must uphold the ruling if it was within the zone of reasonable disagreement. *Id*.

We conclude first that the trial court did not err by conducting its own examination of the jurors. Perez contends that the trial court wrongfully assumed the State's burden to rebut a presumption of harm from juror misconduct. The court of criminal appeals has expressly held that a trial court may question jurors when an allegation of juror misconduct has been made. *See Norman v. State*, 588 S.W.2d 340, 347 (Tex. Crim. App. 1979). In that case, the trial court questioned four jurors about allegations that they spoke with an outsider about the case in violation of the court's instructions. *Id.* The court of criminal appeals held as follows:

> Since the court believed its own instructions had been violated, it was perfectly proper for the court itself to make inquiries into possible jury misconduct. Determinations as to jury misbehavior are up to the discretion of the court. We do not find the questioning prejudicial to the defendant. The very basis of the question was directed toward obtaining a fair and impartial trial.

*Id.* (citations omitted). In this case, the trial court instructed the jury as follows:

> [T]hat it is only from the witness stand that the jury is permitted to receive evidence regarding the case, or any witness therein. No juror is permitted to communicate to any other juror anything he may have heard regarding the case or any witness therein from any source other than the witness stand.

By alleging that the juror obtained information about the location from the PDA, a source other than the witness stand, Perez alleged a violation of the court's instructions. The court's inquiry in this case was permissible as set out by the court of criminal appeals in *Norman*. *See id.* The trial court's questioning of the jury appears to have been directed to ensure that Perez received a fair and impartial trial. *Id.*

5

We also reject Perez's assertion that the trial court's questioning of the jurors demonstrated partiality. Perez asserts that the trial court improperly assumed the State's burden of rebutting a presumption of harm from the juror's actions. The rebuttable presumption of harm Perez cites, however, arises when a juror has talked to an unauthorized person. *See id.*; *see also* Tex. Code Crim. Proc. Ann. art. 36.22 (West 2006) ("No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court.") There is no evidence or allegation that any juror in this case had a conversation with an unauthorized person. Perez cites no authority for the proposition that obtaining location information from a PDA's map gives rise to the same presumption of harm as a conversation with an unauthorized person about the case on trial. The State did not have the burden to rebut a presumption that did not arise, the trial court did not wrongfully assume a burden that did not exist, and the trial court did not show partiality by inquiring to ascertain the existence and scope of any misconduct. Although a trial judge hypothetically could exhibit bias when questioning jurors or witnesses even on permissible subjects, no bias is apparent or alleged in this trial court's manner of questioning of the jurors. We find no ethical breach, violation of procedural statute or rule, or error of nonconstitutional or constitutional magnitude. The trial court did not abuse its discretion or violate case law by conducting its own examination of the jurors and by not requiring the State to rebut a presumption of harm.

We conclude that Perez has not shown that the trial court abused its discretion by denying his motion for mistrial. When interpreting a statutory predecessor to rule of appellate procedure 21.3(f), the court of criminal appeals held that, in order to mandate a new trial, the record must show that "(1) 'other testimony' or 'other evidence' was actually received by the jury, and (2) that such evidence was detrimental to the appellant." *Garza v. State*, 630 S.W.2d 272, 274

(Tex. Crim. App. 1981). "The controlling factor in deciding whether a new trial is required is the character of the evidence, in light of the issues before the jury, not the effect of such evidence on the jurors." *Id*. We can consider the effect of the other evidence only if it contains a misstatement of parole laws—an issue not present in this case. *See id.* The map information showed what county contained the address where the original arrest occurred and thus at most bears on venue. "While it must be established, venue is not a 'criminative fact' and thus not an essential element of the offense." *Boyle v. State*, 820 S.W.2d 122, 140 (Tex. Crim. App. 1989). Venue need only be proved by a preponderance of the evidence. Tex. Code Crim. Proc. Ann. art. 13.17; *see also id.* 13.18. We note that Perez did not challenge venue below or on appeal, which gives rise to a presumption that venue was proper. *See* Tex. R. App. P. 44.2(c)(1). The indictment in this case alleged that Perez possessed cocaine in Williamson County. It is undisputed that the cocaine was not discovered when Perez was arrested at his home, which was the address the juror looked up on his PDA. If one believes the State's witnesses' version of events—as the jury plainly did—Perez was discovered to possess the cocaine at the Williamson County Jail. There is no evidence that the Williamson County Jail is anywhere other than Williamson County, Texas.[3] Perez does not contend on appeal that his arrest or his being booked at Williamson County Jail was improper or anywhere other than Williamson County. Venue for the possession charge was established in Williamson County without regard to where Perez was arrested or the PDA information. We note further that the map information was objective information that is not alleged to have and does not have any apparent

---

[3] To the extent necessary, we take judicial notice of the fact that the Williamson County Jail is in Williamson County, Texas. *See* Tex. R. Evid. 201; *Volosen v. State*, 227 S.W.3d 77, 81 (Tex. Crim. App. 2007).

tangential effects that might influence the jury to convict on grounds independent of the elements of the crime, such as evidence that Perez had committed other crimes or had bad character. We conclude that the PDA map information was not detrimental to Perez because it did not bear on an element of the offense or on the non-criminative fact of venue.

Comparing the facts before us to those in previous cases helps guide our decision. This case is different from cases in which the jurors learn additional damaging information about the defendant from outside sources. *See Garza*, 630 S.W.2d at 273. In *Garza*, a drug possession case, a juror said that "somebody had heard on the radio at noon while we were at lunch that he had a past record" (which another juror testified included murder), and others testified that jurors repeatedly mentioned Garza's record when arguing for conviction. *Id.* Other jurors repeatedly admonished their fellow jurors not to consider his record in deliberations on guilt. *Id.* Although jurors testified that Garza's alleged record did not affect them when finding him guilty, the court of criminal appeals ordered a new trial because statements outside the record were injected into deliberations that were detrimental to Garza's case. *Id.* at 275. In this case, however, the fact "learned" from the PDA was not a new fact for the jury, was not reiterated during deliberations, was not inflammatory and prejudicial like assertions that the defendant has a criminal record including a murder, and was ultimately irrelevant because venue was established through undisputed evidence. This case is more like the case in which some jurors drove by the crime scene and discussed their impressions of it during deliberations. *See Flix v. State*, 782 S.W.2d 1, 2-3 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd). The court of appeals determined that the juror's impressions of the crime scene were essentially redundant of the crime-scene photos introduced into evidence. Because the visit and impressions introduced nothing new into the record, the court decided that they were not "other

8

evidence" and did not proceed to consider whether the evidence was detrimental to the appellant. *Id*. Similarly, in this case, the map information did not inject anything new into the record and did not contradict the undisputed evidence that Perez possessed cocaine in Williamson County at the jail. We conclude that the trial court did not abuse its discretion by overruling Perez's motion for mistrial.

Perez next contends that insufficient evidence supports the verdict of guilt.[4] We will view the evidence in the light most favorable to the verdict and determine whether the jury rationally could have found Perez guilty beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We defer to the jury's determinations on witness credibility and weight of evidence. *Brooks*, 323 S.W.3d at 894; *see also Jackson*, 443 U.S. at 319.

Williamson County Sheriff's Office Sergeant Aaron Howe testified that he searched Perez as part of the intake procedures at the Williamson County Jail. The search included examining Perez's pants pockets. Howe testified, "When I reached my hand into his left pocket and pulled it out, the baggy grazed the top of my hand and it fell to the floor. As I looked down, I saw it laying on the floor." He said he did not see the baggy when it emerged from the pocket but felt it, then saw the baggy land on the floor. He described the baggy as a corner of a clear plastic trash bag that had been torn, and testified that a white substance was clearly visible against the blue tile floor. He slid the baggy across the floor to Georgetown Police Officer Shanna Shelly, consistent with a practice

---

[4] Perez also challenges the factual sufficiency of the evidence supporting the judgment. After he submitted his brief, the court of criminal appeals determined that the challenge to the factual sufficiency of the evidence it previously recognized does not, in fact, exist separately from the legal sufficiency challenge. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996)).

meant to limit the chances of inmates kicking officers. Although he did not see Shelly pick up the baggy, it was not on the floor when he completed the patdown. Shelly testified that she had patted Perez down at the scene of his arrest and had not found any controlled substances. She did not see the baggy fall out of Perez's pocket, but noticed it on the floor when she looked up from the paperwork she was completing. She saw Howe "kick something aside, and it was a small plastic baggy." She testified that she took the baggy into custody and put it into evidence. The lab technician testified that the baggy contained .07 grams of cocaine.

Perez contends that the evidence supporting the verdict that he possessed cocaine is too slight. He notes that Shelly and other officers had patted him down and not noticed the baggy. Shelly testified that it was possible that he had nothing in his pockets. Perez notes that Shelly could not recall certain aspects of the arrest. He cites a contradiction between testimony from Howe and Shelly that no one came through the booking area during the search and audio from the booking area indicating that others were there when he was searched. Perez notes that Howe did not produce a report,[5] did not see the baggy fall, and conceded that contraband is often found in the intake area unconnected to anybody then present. Perez stresses that Howe repeatedly recalled Perez wearing jeans, when other evidence shows that Perez was wearing shorts. Perez finds incredible Howe's claim that the baggy grazing his hand caused him to remember searching Perez without reference to a report.

The contradictory evidence may create an issue regarding the officers' credibility, but does not compel a conclusion that the evidence is legally insufficient to support the verdict. For

---

[5] Howe testified that his computer crashed and took the report with it.

10

instance, Perez's argument that Howe could not without a report possibly remember searching Perez is countered by Howe's assertion that the nature of the seizure—the only time Howe remembered discovering contraband by having it graze his hand—made it memorable. Shelly testified that searchers before Howe might have missed the baggy because it was so small. Other conflicts, such as whether Perez wore jeans or shorts, do not concern elements of the offense but present credibility issues for the jury to resolve. The jury resolved the credibility issues in favor of conviction, and the record does not permit us to conclude that their resolution was irrational. Viewing the evidence as prescribed by *Jackson*, 443 U.S. at 319, we conclude that legally sufficient evidence supports the verdict.

## CONCLUSION

Having determined that the trial court did not abuse its discretion by denying the motions for mistrial or for new trial, that the trial court did not improperly ignore or assume the State's burden to rebut a presumption that the jury's exposure to the PDA map information harmed him, and that legally sufficient evidence supports the verdict of guilt, we affirm the judgment.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: August 12, 2011

Do Not Publish

11