# NO. 12-19-00368-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *GAYLE WILLIAM GORDEN, JR.,* *APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Gayle William Gorden, Jr. appeals his conviction for prostitution/solicitation of a child younger than eighteen years of age. In his sole issue on appeal, Appellant argues that he provided a prima facie case for an entrapment defense and that the State failed to meet its burden to disprove his defense. We affirm.

## BACKGROUND

Appellant was charged by indictment with prostitution/solicitation of a child younger than eighteen years of age by knowingly soliciting a female he believed to be younger than eighteen years of age to engage in sexual conduct, i.e., sexual intercourse, with him for compensation.[1] He pleaded "not guilty." Appellant requested the trial court to instruct the jury on the entrapment defense and on prostitution as a lesser included offense of prostitution/solicitation of a minor, i.e., a person younger than eighteen years of age. The trial court's charge included both instructions.

After a trial on the merits, the jury found Appellant guilty of prostitution/solicitation of a child younger than eighteen years of age, and assessed his punishment at sixteen years of imprisonment and a $100.00 fine. This appeal followed.

---

[1] *See* TEX. PENAL CODE ANN. § 43.02(a), (c-1)(2)(B) (West Supp. 2020).

In his sole issue on appeal, Appellant argues that he raised the entrapment defense, that he provided a prima facie case for his defense, and that the State failed to meet its burden to disprove Appellant's entrapment defense beyond a reasonable doubt. Thus, he contends, this Court should reverse the jury's verdict. However, the State argues that Appellant failed to meet his burden of production to establish entrapment.

## Standard of Review

Generally, entrapment is a question for the jury to decide because it is determined largely by weighing facts and assessing credibility. *Mathews v. United States*, 485 U.S. 58, 63, 108 S. Ct. 883, 886, 99 L. Ed. 2d 54 (1988); *Hernandez v. State*, 161 S.W.3d 491, 498 (Tex. Crim. App. 2005). When, as here, the jury is instructed on entrapment, "the applicable standard of review is the same which applies to sufficiency of the evidence." *United States v. Reyes*, 239 F.3d 722, 739 (5th Cir. 2001). In other words, in reviewing a jury's rejection of an entrapment defense, we determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the criminal offense beyond a reasonable doubt and could have found against the defendant on the issue of entrapment beyond a reasonable doubt. *Hernandez*, 161 S.W.3d at 500. This review must take into account that "the trier of fact . . . not the appellate court . . . was free to accept or reject all or any portion of any witness's testimony." *Id.* (quoting *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992)).

## Applicable Law

Under Texas law, when a defendant raises the defense of entrapment at trial, he has the burden of producing evidence to establish every element of that defense. *Id.* at 497. He must present a prima facie case that (1) he engaged in the conduct charged; (2) because he was induced to do so by a law enforcement agent; (3) who used persuasion or other means; and (4) those means were likely to cause persons to commit the offense. *Id.*; *see* TEX. PENAL CODE § 8.06(a) (West 2011). The entrapment defense has both subjective and objective elements. *Hernandez*, 161 S.W.3d at 497 n.11; *see England v. State*, 887 S.W.2d 902, 913-14 (Tex. Crim. App. 1994).

The subjective element requires evidence that "the accused himself was actually induced to commit the charged offense by the persuasiveness of the police conduct." *England*, 887

S.W.2d at 913 n.10. The objective element requires evidence that "the persuasion was such as to cause an ordinarily [law-abiding] person of average resistance nevertheless to commit the offense." *Id.* at 914. Objective inducement occurs when law enforcement's tactics rise to the level of "active and overt persuasion, more than mere temptation." *Id.* at 911. Thus, "prohibited [law enforcement] conduct c[ould] include pleas based on extreme need, sympathy, pity, or close personal friendship, offers of inordinate sums of money, and other methods of persuasion that are likely to cause the otherwise unwilling person—rather than the ready, willing and anxious person—to commit an offense." *Hernandez*, 161 S.W.3d at 497 n.11.

It has long been established that the defense of entrapment is not available to a defendant who denies that he committed the offense charged. *Warren v. State*, 565 S.W.2d 931, 933 (Tex. Crim. App. 1978); *Stephens v. State*, 522 S.W.2d 924, 926 (Tex. Crim. App. 1975). The defense is not available in such instances because entrapment necessarily assumes the act charged was committed. *Warren*, 565 S.W.2d at 933; *Stephens*, 522 S.W.2d at 926. However, the defendant who pleads not guilty and who does not take the stand or offer any testimony inconsistent with his commission of the crime is still entitled to offer a defense of entrapment. *Norman v. State*, 588 S.W.2d 340, 345 (Tex. Crim. App. 1979), *cert. denied*, 446 U.S. 909, 100 S. Ct. 1836, 64 L. Ed. 2d 261 (1980). Once the defense makes a prima facie showing of each element, the State then has the burden of persuasion to disprove entrapment beyond a reasonable doubt. *Hernandez*, 161 S.W.3d at 498. In this burden-shifting context, entrapment acts like a justification defense such as self-defense. *Id.*

## Evidence at Trial

Heith White, a special agent with the Texas Department of Public Safety, stated that on October 4, 2017, he began an investigation into online solicitation of children by posting an advertisement on Craigslist[2] that read "[s]ummers over bummed," and below that, "[b]ummed summer is over[] looking to chat! Looking for a friend to chat with!" The advertisement included several emoji's[3] including a crying emoji and a glasses emoji, along with descriptors

---

[2] "Craigslist" is an American classified advertisement website with sections devoted to, among others, jobs and discussion forums around the world. *See* http://en.wikipedia.org/wiki/Craigslist.

[3] An "emoji" is any of various small images, symbols, or icons used in text fields in electronic communication (as in text messages, e-mail, and social media) to express the emotional attitude of the writer, convey information succinctly, or communicate a message playfully without using words. *See* MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/emoji.

that the author was "18," located in Lufkin, and "W4M," or a woman looking for a man. He posted the advertisement on the "casual encounters" section of Craigslist in order to "get a bite" from persons looking for sex. White waited for responses to the email account set up to respond to his advertisement.

White received a response from Appellant who stated, "R you still looking for someone to chat with?" He then asked Appellant if he had a messaging "app"[4] called "Kik."[5] He decided to move to the Kik app because conversations are easier to read and it is popular with older people. White's Kik account was under the name "Heather Smith," and Appellant's user name was "UR Daddy." After White, as "Heather,"[6] and Appellant switched to Kik, they began having conversations. On the next message to Appellant after saying "hi," "Heather" stated that "I'm Heather 16 w 5-2 skinny and blonde how about u?" Appellant responded that he was "Bill. 48, w." After some conversations about work, school, and where they lived, Appellant said "U put 18 as ur age on ur [Craigslist] ad." "Heather" responded, "[s]orry yeah. I put 18. Didn't know if they would let me post at 16. Sorry." Appellant said, "[n]o big deal. Just gotta watch where u post it," and that instead of posting on the casual encounters sections, she "should have posted on strictly platonic."

According to White, Appellant requested a photograph of "Heather" and White sent him a photograph depicting a Longview police officer. White stated that over the next twelve days, "Heather" and Appellant discussed what kinds of things they liked to do, how their days went, and learned about one another through their conversations. According to White, Appellant hinted at another kind of relationship and at one point, "Heather" asked him if he was trying to be her sugar daddy. Appellant responded, "[w]hat?" "Heather" told Appellant "never mind," and Appellant stated that he "would like that, but you are too young." White testified that Appellant, again, acknowledged that "Heather" was younger than eighteen years old. He testified that Appellant continued to "fish" regarding what "Heather" would like, such as stating that he was "seeing what [she] liked" about "SD," or sugar daddy. He also stated that he believed Appellant,

---

[4] An "app" is the abbreviation for an application i.e., a program that performs a particular task or tasks designed for a mobile device (such as a smartphone). *See* MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/app; http://www.merriam-webster.com/dictionary/application.

[5] "Kik," or Kik Messenger, is a freeware instant messaging mobile application. *See* http://en.wikipedia.org/wiki/Kik_Messenger.

[6] To avoid confusion, we will refer to the online persona adopted by White as "Heather."

4

not "Heather," was pushing the conversation for being a sugar daddy. White said that Appellant continually hinted about the things that he would do, wanted pictures of "Heather," sent emojis with a tongue sticking out, and stated that he could take care of "Heather."

According to White, their conversations became more explicit after they continued to discuss Appellant being "Heather's" sugar daddy. Eventually, he testified, Appellant proposed that "Heather" come to his house and have sex for $100.00. According to White, he, as "Heather" did not request money, but Appellant offered the money "on his own." "Heather" expresssed some reservations about the meeting, telling Appellant that she did not know him, did not know where he lived, and did not know if he was going to take her and do "something else." In response, Appellant told "Heather" that he was a "good guy," and if she wanted, they could "just meet and talk." Afterwards, if "Heather" felt comfortable, they could "go forward." Appellant and "Heather" set up a meeting date at a truck stop where they planned to go to his house and have sex, and Appellant would give "Heather" $100.00, and bring her back to school. White stated that he requested additional information in order for "Heather" to feel more comfortable with their plan, including a photograph of Appellant's truck and a photograph of a $100.00 bill that he would use to pay her. Both photographs were admitted as evidence. When "Heather" asked Appellant what happened if she did not have sex with him, White stated that Appellant told her that it was "part of the deal." At trial, White and the State's prosecutor read the entire conversation between Appellant and "Heather." According to White, Appellant frequently told "Heather" that he wished that he could make her life better, and that he could make her nights less boring and her life more exciting. White considered these messages to be "laying the groundwork" talk.

After White agreed to meet Appellant, law enforcement arrested him at the truck stop that morning. He said that Appellant's wallet contained a $100.00 bill with the same serial number as the photograph of the $100.00 bill sent to "Heather." He also stated that the truck Appellant was driving when he was arrested was the same vehicle as the one depicted in the photograph that he sent to "Heather."

**Analysis**

As noted above, Appellant's sole issue on appeal is the entrapment defense of which he must have presented a prima facie case. We will discuss each element of the defense in turn. First, Appellant must establish that he engaged in the conduct charged. As previously stated,

5

Appellant was charged with prostitution/solicitation of a child younger than eighteen years of age by knowingly soliciting a female he believed to be younger than eighteen years of age to engage in sexual conduct, i.e., sexual intercourse, with him for compensation. Appellant acknowledges that he did not object to his text messages offered as evidence even though he pleaded "not guilty" to the offense. However, the defendant who pleads not guilty and who does not take the stand or offer any testimony inconsistent with his commission of the crime is still entitled to offer a defense of entrapment. *See Norman*, 588 S.W.2d at 345. Here, Appellant pleaded "not guilty" and did not take the stand.

Nonetheless, during his interview with police after being arrested, Appellant denied knowing that "Heather" was sixteen years old. Appellant recalled "Heather" describing herself as "white, skinny, 5'2", blonde" but not "16." During the interview, Appellant denied that he knew "Heather" was sixteen years old at least five times. He thought he was meeting an eighteen year old woman. At trial, White admitted that his first advertisement on Craigslist purported to be from a person that was eighteen years old as required by Craigslist on advertisements for "casual encounters." Moreover, Appellant's attorney requested a directed verdict in the case, contesting that Appellant believed "Heather" to be a person younger than eighteen years of age. Appellant's attorney also requested, and received, a jury instruction for the lesser included offense of solicitation of a female for compensation. The lesser included offense did not include language that he solicited a female that he believed to be a person "younger than eighteen years of age." Appellant's interview and his request for the lesser included offense instruction is inconsistent with the specific conduct charged. Because Appellant continually denied knowing that "Heather" was under eighteen years old, he contested one of the elements of the offense charged. Thus, Appellant's prima facie showing fails on the first element.

However, even if Appellant's prima facie showing did not fail on the first element of the entrapment defense, Appellant must show that he engaged in the conduct charged because he was induced to do so by a law enforcement agent. In Appellant's brief, he argues only that "[c]riteria #2 is also satisfied, as the undercover agent testified at trial." There is no further discussion of this element in the brief. *See* TEX. R. APP. P. 38.1(i) (brief must contain clear and concise argument for contentions made). Nor does Appellant explain how White's testimony at trial satisfied Appellant's burden of making a prima facie case that he was induced by White to solicit prostitution of a person younger than eighteen years old. Because Appellant produced no

6

evidence that he was induced to engage in the conduct charged by a law enforcement agent, his prima facie showing fails on the second element.

Next, Appellant must make a prima facie showing that the law enforcement agent used persuasion or other means to cause him to commit the conduct charged. The degree of persuasion that it takes to meet this test will vary from case to case, but examples include pleas based on extreme need, sympathy, or close personal friendship; offers of inordinate sums of money; and extreme pleas of need due to desperate illness. *Bailey v. State*, No. 08-08-00023-CR, 2009 WL 3152876, at *3 (Tex. App.—El Paso Sept. 30, 2009, no pet.) (op.) (not designated for publication) (citing *Guia v. State*, 220 S.W.3d 197, 204 (Tex. App.—Dallas 2007, pet. ref'd); *Campbell v. State*, 832 S.W.2d 128, 130 (Tex. App.—Corpus Christi 1992, pet. ref'd); *Becerra v. State*, No. 05-99-00412-CR, 2000 WL 124683, at *2 (Tex. App.—Dallas, Feb.3, 2000, pet. ref'd) (op., not designated for publication)). In his brief, Appellant argues that the third element is satisfied because of "Heather's" suggestive language and that she "aggressively post[ed] on an adult dating site looking for a 'hook up' because she" was bored. Further, he argues, "Heather" played a "cat and mouse" game with him, pretending to be bored, faking a bad mood, or feeling upset with her circumstances. Appellant argues that "Heather's" complaints lured him in, caused him to become "steadfastly more concerned" with "Heather's" wellbeing, and resulted in him responding with sympathetic messages.

However, the evidence at trial showed that Appellant pursued a sexual relationship with "Heather." White testified that Appellant frequently told "Heather" that he wished he could make her life better, that he could make her nights less boring, and that he could make her life more exciting. White considered these messages to be "laying the groundwork" talk. He testified that Appellant kept "hinting" at a sexual relationship without actually saying the word "sex." He explained that their conversations had "sexual overtones," particularly when Appellant stated he wished he could make it better, asked what "Heather" would like for him to do to her or for her, and wanted to see what she liked. In response, White stated that he asked Appellant "R you trying to be my sugar daddy?" and "Show me the money." Appellant responded that he would like "that," but she was "too young." When "Heather" stated that she must have misunderstood him, Appellant responded "[n]o, you didn't." Appellant stated that they could discuss him being a sugar daddy, asked her multiple times to send him naked pictures, and talked about meeting her.

7

In contrast, White, as "Heather," confessed to being scared, stopped responding to his messages at times, told Appellant he was being mean and worried that he would hurt her, and refused to send him a nude picture of her in the shower. Despite "Heather's" reluctance, Appellant continued to send messages to "Heather," promising her an allowance, and telling her that they would have fun, she would enjoy it, and he would not hurt her. He also planned their meeting time and place, and stated that he would give her $100.00 in "allowance," that having sex with him was "part of the deal," and that he wanted their meeting to be "a regular thing, maybe once a month." None of the evidence shows that White's actions or tactics rise to the level of active and overt persuasion. *See England*, 887 S.W.2d at 911. Because Appellant did not show that White, as "Heather," used active and overt persuasion to cause him to commit the conduct charged, his prima facie showing on the third element fails.

The fourth element of a prima facie case of entrapment is showing that law enforcement's persuasion or other means were likely to cause Appellant to commit the conduct charged. The standard, again, is an objective one: whether the persuasion used by law enforcement was such as to cause a hypothetical person—an ordinarily law abiding person of average resistance—to commit the offense. *See England*, 887 S.W.2d at 908. The question is not whether the persuasion was such as to cause Appellant, given his proclivities, to commit the conduct charged. *See id.*

Appellant argues that he repeatedly attempted to contain the relationship despite "Heather's" persistence. In his brief, he points to certain parts of the conversation where he admitted "Heather" was too young, that he hoped they could remain friends, and that after they decided to meet, he said, "[w]e don't have to if you don't want to."[7] However, Appellant presented no evidence that "an ordinarily law abiding person" would be persuaded by law enforcement to commit the conduct charged or to pay a sixteen year old girl to have sexual intercourse with him for $100.00. At trial, White stated that he had forty or fifty responses to his initial Craigslist advertisement. However, he sent the second message mentioning that "Heather" was sixteen years old, all but four or five of the responding persons immediately stated that she was "too young" or did not respond at all. White stated that one person did not "bite," and one lectured "Heather." No one besides Appellant continued to pursue sexual relations with

_____

[7] In his brief, Appellant mischaracterized Appellant's offer to "cut it off or do nothing sexual." In fact, he told "Heather" that "[y]ou don't have to if you don't want to, but would like a new pic." Later in the conversation, he asked "Heather" to take a picture of herself in the shower.

8

"Heather" after discovering that she was sixteen years old. Appellant offered no evidence that a person of average resistance would have been induced to commit the conduct charged. Because Appellant did not show that White's persuasion caused him to commit the conduct charged, his prima facie showing on the fourth element fails.

Therefore, Appellant failed to present a prima facie case of the entrapment defense and produce evidence to establish every element of that defense. Appellant's sole issue is overruled. Because we conclude that Appellant did not present a prima facie case of his entrapment defense, we do not consider whether the State disproved entrapment beyond a reasonable doubt. *See Hernandez*, 161 S.W.3d at 498; *see also* TEX. R. APP. P. 47.1.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the judgment of the trial court.

**BRIAN HOYLE**
Justice

Opinion delivered October 30, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 30, 2020**

**NO. 12-19-00368-CR**

**GAYLE WILLIAM GORDEN, JR.,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 217th District Court

of Angelina County, Texas (Tr.Ct.No. 2018-0885)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*