

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00442-CR

KRISTI NEWBROUGH                                              APPELLANT

V.

THE STATE OF TEXAS                                                 STATE

----------

## FROM THE 367TH DISTRICT COURT OF DENTON COUNTY
## TRIAL COURT NO. F-2012-2117-E

----------

## MEMORANDUM OPINION[1]

----------

Appellant Kristi Newbrough appeals her conviction of possession of a controlled substance by fraud under section 481.129 of the health and safety code and sentence of five years' confinement. *See* Tex. Health & Safety Code Ann. § 481.129 (West Supp. 2014). In five issues, Newbrough argues (i) the trial court abused its discretion in allowing evidence of additional prescriptions in her

---

[1]*See* Tex. R. App. P. 47.4.

possession, (ii) the trial court abused its discretion in allowing testimony by the arresting officer that she lived in a high crime area, (iii) the trial court erred in not sua sponte granting immunity to a witness after that witness claimed her Fifth Amendment privilege against self-incrimination, (iv) the trial court erred by not allowing her attorney to testify to out-of-court statements made by a witness, and (v) that she received ineffective assistance of counsel.  We affirm.

## I. Factual and Procedural Background

On June 15, 2012, Newbrough tendered a prescription to be filled at a Kroger pharmacy located in Carrollton.  The prescription bore the name of Shanna Brooks and was for a large quantity of hydrocodone.  Despite the fact that Brooks had insurance on record with a Kroger pharmacy at a different location, Newbrough declined to use it, choosing instead to pay the full cost for the prescription.[2]  These facts, combined with the fact that he had never before filled a prescription written by the prescribing doctor, whose office was located 15–20 miles away from the pharmacy, caused the pharmacist on duty, Hoa Pham, to become suspicious.

Pham informed Newbrough that he would need to call the doctor's office to verify it.  After faxing the prescription to the physician's office, the office manager confirmed that Brooks had never been a patient there, that the prescription did not come from their office, that the paper size of the prescription—8 1/2" x 11"—

---

[2]The prescription cost $60–80 without insurance.

did not match the size their office used, and that the signature on the prescription did not resemble the doctor's real signature. The doctor's office requested that Pham contact law enforcement. He did.

Officer Randall Zabojnik of the Carrollton Police Department was dispatched to the pharmacy. Upon arrival, Officer Zabojnik took Pham's statement, reviewed the prescription, and then directed Pham to contact Newbrough and inform her that the prescription was ready. Officer Zabojnik then left the pharmacy but waited nearby. When Newbrough arrived at the pharmacy to pick up the prescription, Officer Zabojnik returned and began questioning Newbrough about it.

Newbrough told Officer Zabojnik that she was filling the prescription for Brooks, her roommate, who had pinkeye and could not go out into the sunlight. Newbrough told Officer Zabojnik that although she found it odd that the prescription was on a full sheet of paper, she did not know that the prescription was forged. After arresting Newbrough, Officer Zabojnik searched her person and found Brooks's identification card and prescription benefits card, as well as three additional prescriptions[3] in Brooks's name that Newbrough had not presented to Pham to be filled.

---

[3]These three prescriptions were for Bactrim DS, Naprosyn, and Clindamycin.

3

## II. Evidentiary Issues

In her first and second issues, Newbrough complains that the trial court abused its discretion in admitting (i) evidence of additional prescriptions in her possession at the time she was arrested and (ii) testimony by Officer Zabojnik that she was living in a high crime area at the time she committed the offense.

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). A trial court abuses its discretion when its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A trial court does not abuse its discretion if its decision is within "the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008). We will uphold the trial court's ruling if there is any basis to sustain it, even if it is not the basis upon which the trial court relied. *Whitmire v. State*, 183 S.W.3d 522, 529 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

### A. Admission of Additional Prescriptions

In her first issue, Newbrough argues the trial court abused its discretion by admitting into evidence the additional prescriptions that were in her possession at the time of her arrest because they were irrelevant and more prejudicial than probative. *See* Tex. R. Evid. 401, 403.

Relevant evidence is that which has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable. *See* Tex. R. Evid. 401, 403; *Hawkins v. State*, 871 S.W.2d 539,

4

541 (Tex. App.—Fort Worth 1994, no pet.) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)). Such evidence is presumed to be more probative than prejudicial and should be excluded under rule 403 only if there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value." *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001). Unfair prejudice justifying exclusion means more than a tendency to injure or prejudice a defendant, which of course is the point of introducing evidence in the first place, but refers to an undue tendency to suggest a decision on an improper basis. *See Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999); 1 Steven Goode et al., *Texas Practice Series: Guide to the Texas Rules of Evidence* § 403.2 (3d ed. 2015). In making a rule 403 determination, a trial court is to balance many factors, including the probative force of the evidence, the State's need for the evidence, any tendency to suggest a decision on an improper basis or confuse the jury, and the likelihood that the presentation of the evidence will consume an inordinate amount of time. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 & n.8 (Tex. Crim. App. 2006).

Newbrough's defense centered on her claim that she was trying to do a favor for a friend who had pinkeye by picking up her medication and that she did not know that the hydrocodone prescription was forged. Newbrough complains that the trial court's admission of evidence of additional prescriptions in her possession was "highly prejudicial" because it allowed the State to "insinuate that [she] was walking around with a pocket full of prescriptions, selecting only to fill

5

the one for painkillers." Newbrough is correct—this is exactly what the evidence tended to prove, and such insinuation is precisely what made the evidence relevant. Newbrough claims that she was tending to a sick friend's needs, and, yet, she chose to present only the painkiller prescription—not the antibiotic prescriptions—to the pharmacy to be filled. Because evidence of Newbrough's failure to request the filling of these antibiotic prescriptions tended to make her innocently-doing-a-favor-for-a-sick-friend argument less probable, this evidence was relevant. *See Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006).

This evidence was prejudicial, but not unfairly so. *See Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) ("[T]estimony is not inadmissible on the sole ground that it is 'prejudicial' because in our adversarial system, much of a proponent's evidence is legitimately intended to wound the opponent."). Indeed, Newbrough points us to no potential danger that the evidence could have been considered for an improper purpose or mislead the jury, or that it caused undue delay or needlessly presented cumulative evidence. *See* Tex. R. Evid. 403; *see also Gigliobianco*, 210 S.W.3d at 641–42. Given Newbrough's defense, the State's need for this evidence to show Newbrough's knowledge that the hydrocodone prescription was forged weighs in favor of admission of the prescriptions, and Newbrough fails to argue any theory that would weigh against its admission. Therefore, the trial court did

6

not abuse its discretion by admitting the evidence, and we overrule Newbrough's first issue.

### B. Hotel Testimony

In her second issue, Newbrough argues that the trial court abused its discretion in admitting Officer Zabojnik's testimony that Newbrough lived in a hotel located in a high-crime area.[4]

During her cross-examination of Officer Zabojnik, Newbrough aggressively questioned him about Newbrough's expressed desire that they go back to her hotel room to question Brooks about the prescription:

> Q:    Kristi adamantly tells you at this time the prescription is not hers, they belong to Ms. Brooks, correct?
>
> A:    That's correct.
>
> Q:    And, in fact, I believe I counted six times—the first time do you recall hearing that she says, she's sick in my hotel room?
>
> Do you recall her stating that?
>
> A:    Yes, I do.
>
> Q:    The second time she says: She took Seroquel. She's asleep in my hotel room.
>
> Do you recall that?
>
> A:    I don't recall the exact quote, but I do remember her referencing her taking Seroquel.
>
> Q:    Okay.  The third time she says, right now as we speak she's at the hotel?

---

[4]Newbrough's motion in limine regarding this evidence was unopposed by the State and granted by the trial court prior to trial.

A:    Correct.

Q:    The fourth time she says, can we go get her, referring to Shanna?

A:    I—I don't recall that—that one.

Q:    Okay.  Do you need to listen to the video again?  If I were to tell you that's what the video says, would you accept that as true?

A:    Yes.  I would not refute that.

Q:    The fifth time she says that Shanna got stuck there.  By "there," at the hotel.  Do you recall that?

A:    Yes.

Q:    And the last time—this is actually after you arrested her—she asks you, is there any way that we can go and talk to Shanna in my room?

Do you recall that?

A:    Yes.

Q:    So even though all of the evidence is linked to Shanna and you know where Shanna is, you never went to interview Shanna, did you?

A:    No, I did not.

Thereafter, in a hearing outside the presence of the jury, the State requested that it be allowed to inquire as to the reasons why Officer Zabojnik did not take Newbrough up on her offer to go to the hotel to question Brooks, arguing that Newbrough had opened the door to this inquiry.  The trial court agreed with the State that the door had been opened as to why the officer did not take Newbrough to the hotel, but it cautioned that Officer Zabojnik would not be permitted to testify as to any specific criminal activity at the hotel, such as drug

8

use.  On redirect examination in front of the jury, Officer Zabojnik explained, "Well, it's not our normal procedure to do so, to take a subject to another place. Specifically, this time I didn't because of the criminal activity and the danger that's involved with going to that place."[5]

Evidence that would normally be inadmissible may become admissible if a party "opens the door" to it.  *See, e.g., Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (assuming evidence inadmissible under rule 404(b), and holding no abuse of discretion because appellant opened the door), *cert. denied*, 560 U.S. 966 (2010); *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009) (holding that even though State opened the door, trial court acted within its discretion to exclude rebuttal evidence under rule 403); *Carroll v. State*, No. 02–11–00265–CR, 2013 WL 2435560, at *3 (Tex. App.—Fort Worth June 6, 2013, no pet.) (mem. op., not designated for publication).  A party opens the door to otherwise inadmissible evidence by leaving a false impression with the jury that invites the other side to respond.  *Hayden*, 296 S.W.3d at 554; *Green v. State*, 831 S.W.2d 89, 94 (Tex. App.—Corpus Christi 1992, no writ) ("When the defendant 'opens the door' on an issue by attempting to present an incomplete picture of an incident, the State is permitted to complete the picture by presenting

---

[5]He also further clarified that he did not go to the hotel after Newbrough's initial arrest because he is not a detective and does not generally have the opportunity to do such further investigation.

9

evidence that would otherwise have been inadmissible."); *See also* Tex. R. Evid. 106, 107.

On cross-examination of Officer Zabojnik, Newbrough opened the door to the question of whether, by failing to go to the hotel as suggested by Newbrough, Officer Zabojnik arrested Newbrough without the benefit of a sufficient investigation. The State was permitted to close that door through further questioning regarding why Officer Zabojnik did not go to the hotel. *See Hayden*, 296 S.W.3d at 554. Accordingly, the trial court did not abuse its discretion in allowing Officer Zabojnik to testify that the potential for criminal activity and danger at the hotel was a factor in his decision not to take Newbrough there. We overrule Newbrough's second issue.

### III. Brooks's Immunity

In her third issue, Newbrough argues that the trial court erred in not sua sponte granting immunity to Brooks after Brooks invoked her Fifth Amendment privilege against self-incrimination and refused to answer questions at trial, and that such error violated her right to present a meaningful defense.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013); *Sanchez v. State*, 418 S.W.3d 302, 306 (Tex. App.—Fort Worth 2013, pet. ref'd).

Newbrough concedes that although she asked the trial court to compel Brooks to testify, she did not ask the trial court to grant immunity to Brooks. Assuming without holding that the trial court had the authority to grant immunity to Brooks, Newbrough has supplied no authority for the proposition that the trial court has a duty to do so sua sponte.[6] Because Newbrough did not request the trial court grant immunity to Brooks, she has forfeited her complaint that the trial court did not do so. *See, e.g.*, *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."). Accordingly, we overrule Newbrough's third issue.

## IV. Brooks's Out-of-Court-Statements

Newbrough's fourth and fifth issues relate to the trial court's refusal to permit Josh Floyd, Newbrough's attorney, to testify as to out-of-court statements made by Brooks. Newbrough argues that the trial court abused its discretion by excluding Floyd's testimony and, alternatively, that Floyd's actions in continuing

---

[6]In *Norman v. State*, 588 S.W.2d 340, 344–46 (Tex. Crim. App. [Panel Op.] 1979), the court of criminal appeals found error where the trial court denied immunity when it had been requested by defense counsel. *Norman* did not hold that the trial court has a sua sponte duty to grant immunity to a witness. *Id.* Rather, the defendant in *Norman* had requested immunity for the witness when it became clear that the witness was an agent of the State and his Fifth Amendment claim was "spurious." *Id.* at 343–44.

11

to represent her after Brooks refused to testify constituted ineffective assistance of counsel.

## A. Disqualification of Floyd as a Witness

The trial court held Floyd's testimony was inadmissible because he had acted as a lawyer for Newbrough throughout the proceedings. *See* Disciplinary Rules Prof'l Conduct R. 3.08(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2013).

Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct precludes a lawyer from acting as both an advocate and a witness in an adjudicatory proceeding when his testimony is necessary to establish an essential fact. Tex. Disciplinary Rules Prof'l Conduct R. 3.08(a). This rule is used for guidance in disqualification disputes. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004).

> [T]he principal concern over allowing a lawyer to serve as both an advocate and witness for a client is the possible confusion that those dual roles could create for the finder of fact. . . . If . . . the lawyer's testimony concerns a controversial or contested matter, combining the roles of advocate and witness can unfairly prejudice the opposing party. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

Tex. Disciplinary Rules Prof'l Conduct R. 3.08 cmt. 4. The lawyer who may be called as a witness is not prohibited from participating in preparation of the matter, but he cannot take an active role in the trial. *Id.* at cmt. 8. Another

12

attorney in the same firm, however, may act as an advocate at trial with the informed consent of the client. *Id.*

After Brooks invoked her Fifth Amendment right and refused to testify at trial, Newbrough attempted to call Floyd as a witness to testify to statements made by Brooks in an out-of-court interview. By this point in the trial, the jury was familiar with Floyd in his role as an attorney and advocate for Newbrough because he had conducted voir dire and cross-examined a witness.

A trial court's ruling on the admissibility of the evidence is reviewed for abuse of discretion and will not be overturned unless it is arbitrary or unreasonable. *Carrasco*, 154 S.W.3d at 129; *Mechler*, 153 S.W.3d at 439. At that juncture in the trial process, to allow Floyd to take the witness stand and testify as to an essential fact in the case, i.e., whether Brooks had informed Newbrough that the prescription was fraudulent, carried with it substantial risk that the jury would give Floyd's testimony undue weight or would have been confused by his mixed role as advocate and witness. *See Gonzalez v. State*, 117 S.W.3d 831, 840 (Tex. Crim. App. 2003) ("If [defense] counsel were to have testified, the State would have been prejudiced not only by the undue weight jurors might attach to counsel's testimony, but also by confusion"). Under these circumstances, we cannot say that the trial court abused its discretion by not allowing Floyd to testify. *See, e.g., Beasley v. State*, 728 S.W.2d 353, 357 n.5 (admonishing that it would be "highly improper" for an assistant district attorney "to serve as witness to the [defendant's] confession, then to resume conducting

13

the State's case, then to argue to the jury that *his* version of events was more credible than [the defendant's].") (*overruled on other grounds by Brown v. State*, 728 S.W.2d 227 (Tex. Crim. App. 1987). Accordingly, we overrule Newbrough's fourth issue.

### B. Ineffective Assistance of Counsel

In her fifth issue, Newbrough argues that she was not afforded effective assistance of counsel because Floyd should have withdrawn as her attorney once it became clear that Brooks would not testify.[7]

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that her counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). An ineffective-assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *Thompson*,

---

[7]Newbrough invites us to hold that the trial court had a sua sponte duty to require Floyd to withdraw but provides no support for such a proposition, and we decline to do so.

14

9 S.W.3d at 813–14. In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record or when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel is not given that opportunity, we should not conclude that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308.

The prejudice prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words,

appellant must show there is a reasonable probability that, without the deficient performance, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2070.

The trial court appointed an attorney to advise Brooks of her Fifth Amendment rights four days before trial was set to commence on September 22, 2014. On the morning of September 22, Brooks made the court and the parties aware that she was going to invoke her Fifth Amendment rights. At that point, Floyd did not withdraw but rather proceeded to conduct voir dire that afternoon and represent Newbrough throughout the trial.

There is no explanation in the record as to why Floyd did not withdraw or take a less active role in the trial once Brooks stated she would plead the Fifth Amendment. However, unless his conduct was so outrageous that no competent attorney would have engaged in it, we cannot infer ineffective assistance. "It is a rare case in which the trial record will by itself be sufficient to demonstrate an ineffective-assistance claim." *Nava*, 415 S.W.3d at 308.

Assuming, without deciding, that Floyd should have withdrawn from representation at this point, his failure to withdraw did not deprive Newbrough of a fair trial because the testimony Floyd sought to sponsor as a witness

16

constituted inadmissible hearsay. Although Newbrough argues that the testimony would have been admissible under rule of evidence 803(24) as a statement against interest, Brooks's statement does not fall within that hearsay exception. Tex. R. Evid. 803 (24) (West 2014, amended 2015).[8] Rule 803(24) provides an exception to the hearsay bar for statements that, at the time of their making, "so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in [the] declarant's position would not have made the statement unless believing it to be true." *Id.* This exception also provides that "[i]n criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.* Thus, determining whether a statement is admissible as a statement against interest requires a two-step inquiry. *Bingham v. State*, 987 S.W.2d 54, 57 (Tex. Crim. App. 1999). First, the trial court must determine whether the statement in question tends to expose the declarant to criminal liability. *Id.* Second, the trial court must determine whether there are corroborating circumstances that clearly indicate the trustworthiness of the

---

[8]The Texas Rules of Evidence were amended effective April 1, 2015. We refer to the version of the rules that was in effect at the time of trial in September 2014, and note that the Texas Supreme Court and Texas Court of Criminal Appeals have noted that the amendments comprise a general restyling of the rules only, and with the exception of two rules not applicable here, did not make substantive changes. *See* Tex. Final Approval of Amendments to the Texas Rules of Evidence, Misc. Docket No. 15-9048, 78 Tex. B. J. 374 (March 10, 2015) and Tex. Crim. App. Final Approval of Amendments to the Texas Rules of Evidence, Misc. Docket No. 15-001, 78 Tex. B. J. 376 (March 12, 2015).

17

statement. *Id.* In making this inquiry, however, we need not reach the second step, because Brooks's statement did not tend to expose her to criminal liability.

In Newbrough's offer of proof at trial,[9] her attorney stated that had Floyd been permitted to testify, he would have testified that Brooks admitted to him that: (1) Brooks knew the prescription was fraudulent, (2) Brooks had obtained it from a friend who created fraudulent prescriptions, (3) Newbrough did not know the prescription was fraudulent, and (4) Newbrough was trying to help Brooks by getting the prescription filled. However, in the conversation between Floyd and Brooks, which was recorded and included in the record on appeal, Brooks's statements are less straight-forward than the offer of proof would suggest.

While Brooks did confirm that Newbrough did not know that the prescription was fake, in the recorded conversation Brooks stops short of admitting that *she knew* the prescription Newbrough attempted to fill at the pharmacy was fake. Rather, Brooks equivocates, stating that she was asleep when Newbrough took the prescription to be filled, that she did not give Newbrough the prescription, and that Brooks thought it was legitimate.[10] At one point, she asked Floyd, "What determines a fake [prescription]? What makes it

---

[9]Floyd did not make his own offer of proof. Co-counsel, Christina Jimenez, did.

[10]She repeats this three times during the conversation: "The 'scrip was good," "As far as I know, they were legit," and "I thought they were legit."

18

real or not real?"  At best, toward the end of the conversation, Brooks admits to a "possibility" that the hydrocodone prescription was not good.

Throughout the conversation, Brooks emphasized that she did not want to "rat" anyone out or get herself into trouble.  While the content of her statements were indeed favorable to Newbrough's interest, given the caution that Brooks exercised throughout her statements to ensure that she did not get herself into trouble, Brooks's statements cannot be construed as statements against her own interest.[11]  And, certainly, they do not rise to the level that they "so far tended" to subject her to criminal liability that a reasonable person in Brooks's position would not have made the statement unless she believed it to be true.  *See* Tex. R. Evid. 803(24).  *See, e.g.*, *Beaty v. State*, 156 S.W.3d 905 (Tex. App.—Beaumont 2005, no pet.) (reasoning that knowledge of the forgery was shown where defendant implicated herself as a willing participant in a scheme to acquire controlled substances with "a high degree of abuse potential").

_____

[11]The declarant must recognize the disserving nature of her statement when it is made in order for the statement to qualify as a statement against interest, or it merely indicates ignorance, not trustworthiness, and is not admissible.  *Walter v. State*, 267 S.W.3d 883, 891 n.26 (Tex. Crim. App. 2008) (citing *United States v. Palumbo*, 639 F.2d 123, 127–28 (3rd Cir. 1981) (stating that although technically declarant's statement to arresting officer who had found cocaine on her person might tend to show a conspiracy between herself and defendant, she may not have understood the legal implications of her statement); *United States v. Woolbright*, 831 F.2d 1390, 1395 (8th Cir. 1987) (holding that woman's statement that bag filled with illegal drugs was hers, not the defendant's, was against her penal interest, but her statement that she and defendant were on a honeymoon trip did not fit exception because even if it were against her penal interest, there was no evidence that she was "in any manner aware" that it was)).

Because Floyd's testimony would have been properly excluded as inadmissible hearsay, we cannot conclude that Newbrough received ineffective assistance of counsel when Floyd failed to withdraw as Newbrough's attorney after becoming aware that Brooks would refuse to testify. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. We therefore overrule Newbrough's fifth issue.

## Conclusion

Having overruled each of Newbrough's issues, we affirm the judgment of the trial court.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL: GARDNER, MEIER, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 15, 2015